IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE JACOBS,
　　　　　Plaintiff,

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JEFFREY BEARD, THOMAS MCCONNELL, CAROL SCIRE, GREGORY GIDDENS, ALLEN LYNCH, ROBERT BITNER, CAPTAIN J. SIMPSON, KRISTIN P. RESSING, MICHAEL FERSON, SHELLY MANKEY, WILLIAM STICKMAN, FRANK CHERICO, DAVID MCCOY, all in their individual capacities,
　　　　　Defendants.

FILED
MAY 22 2006
CLERK U.S. DISTRICT COURT
　T. DIST. OF PENNSYLV.

Civil Action No. 04-1366
JURY TRIAL DEMANDED

AMENDED COMPLAINT

## PRELIMINARY STATEMENT

This is a civil rights complaint filed by state prisoner Andre Jacobs, pro se, seeking $150,000.00 in damages, declaratory judgments and injunctive relief under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, asserting unlawful destruction of personal property, defamation of character, conspiracy, cruel and unusual punishment, retaliation, discrimination, denial of due process, denial of access to courts, and maintaining false business records by state agency, in contravention of the 1st, 8th, and 14th Amendments under the U.S. constitution.

## JURISDICTION

1. This court has jurisdiction over Plaintiffs' claims of violations of federal constitutional rights under 42 U.S.C. §§ 1331, 1334(a)(3) and (4).

2. Pursuant to 28 U.S.C. § 2201 and 2202, this court has jurisdiction to declare the rights of plaintiff and to grant all further relief found proper and just.

## PARTIES

3. The plaintiff, Andre Jacobs, was incarcerated at SCI-Western within the Long term Segregation unit ("LTSU") during the events complained of herein.

4. All of the defendants are employed for the Department of Corrections and were so employed at all times relevant.

## I. STATEMENT OF CLAIM

5. On September 15, 2003, defendant Cherico seized 151 pages of plaintiff's legal documents from inmate Eric Lyons ("Mr. Lyons").

6. Mr. Lyons has a history of filing administrative grievances and civil actions.

7. The documents were seized on the alleged grounds that prisoners are prohibited from assisting one another with legal matters unless the assistant is a 'recognized' legal aid.

8. Plaintiff avers that he does have a right to be assisted in matters of the law which are beyond his comprehension.

2

9. SCI-Western did not have a system in place which provided assistance to LTSU prisoners by 'recognized' legal aids or anyone else.

10. Plaintiff asserts that the DOC's policy of discouraging legally educated inmates from assisting legally uneducated inmates is designed to hinder prisoners' right to access the courts and make meaningful court filings.

11. Prohibiting inmates from assisting inmates in legal matters, even while in the law library, is an exaggerated response to any perceived security risk.

12. Plaintiff filed an administrative grievance challenging the penological basis for seizing and refusal to return his legal property.

13. Defendant Giddens responded to plaintiff's grievance by reducing the amount of documents seized by Defendant Cherico from 151 to 2 pages, and calling Plaintiff a "fabricator" for making such a claim.

14. Unbeknownst to Defendant Giddens, Plaintiff had also wrote to Defendant MCConnell informing him of the event and implied that the materials would be returned to Plaintiff.

15. Defendant Giddens nonetheless advanced his concealment endeavor by alleging in official records that disposition was taken concerning the documents taken from Mr. Lyons and threatened Plaintiff with disciplinary action if he pursued his claims.

16. Defendant Giddens knew that no disposition was taken as to the seized materials but was instead laying

3.

his groundwork to confuse one incident with one which happened the following day.

17. Rather than simply returning the materials to plaintiff when they realized their actions were arbitrary, defendants Giddens, Cherico and McConnell conspired to, and did, destroy the official reports related to the seizure and created false ones to make it appear that the September 15, 03 seizure never happened.

18. Defendants' actions were motivated to discriminate/ retaliate against plaintiff and deprive him of federally protected rights.

19. Plaintiff's subsequent submissions to defendants Stickman and McConnell, requesting that they intervene in the planned destruction of plaintiff's legal property went unacknowledged.

20. The false records being maintained by the defendants in relation to these events thereafter served as a system-wide vehicle to render plaintiff's credibility questionable and diminished the likelihood of him obtaining administrative relief of his grievances indefinitely.

21. Subsequently, plaintiff was charged as a "fabricator" and "liar" based upon the false records created in concert by defendants Giddens, McConnell, Stickman and Cherico.

22. Plaintiff avers that defendants' concerted conduct discourages him from filing administrative complaints to to seek relief for constitutional violations.

23. Defendant Scire assisted in the conspiracy to conceal

the September 15, 03 seizure by providing Defendant Giddens with an avenue to "clean up" with the intent to deprive plaintiff of his right to access the courts. i.e. appointing Defendant Giddens as the Grievance Officer to address the complaint which plaintiff filed against Defendant Giddens.

24. Defendant Scire has a long, documented history of sabotaging prisoners' administrative grievances and civil litigation.

25. Defendant Scire <u>knows</u> that prison policy specifically prohibits her from appointing the person who's being complained of as the Grievance Officer to address that complaint.

26. Plaintiff <u>does not</u> assert a right regarding how his grievances are handled, rather, one to not have the grievance process used as a vehicle to help conceal unlawful actions of prison officials which violate plaintiff's constitutional rights.

27. The actions/inactions of Defendants McDonnell, Giddens, Scire and Cherico were motivated to strike back at plaintiff for filing grievances and lawsuits against them.

28. More specifically, plaintiff had previously filed a grievance against Defendants Giddens and Cherico for exactly the same conduct — they seized and destroyed plaintiff's legal documents and claimed plaintiff made the story all up.

29. Plaintiff had also filed complaints against Defendant Scire for sabotaging his grievance claims on previous occasions.

5

30. Among the materials seized from Mr. Lyons was an anticipated lawsuit which named Defendants Giddens, Stickman and Scire as Defendants.

31. Because of Defendants' concerted actions, Plaintiff was prevented in pursuing his claims against them in that complaint.

32. Defendant Giddens admitted to Mr. Lyons that he sought to have Plaintiff's legal materials destroyed because Plaintiff was attempting to sue he and his friends and that he "would have been a fool" to return them to Plaintiff.

33. Plaintiff's grievance appeal to Defendant Stickman pointed out the fact that Defendant Giddens was obviously lying, that there was a conspiracy in progress and that Plaintiff simply wanted his legal property back.

34. Defendant Stickman denied Plaintiff's appeal after discovering that he was also named in the anticipated lawsuit and did not want Plaintiff to expose what had happened.

35. Defendant Stickman made further substantial steps to assist in the conspiracy by reducing the amount of documents seized from 151 to 2 and fabricating a date and disciplinary report tracking number to help make it appear that the September 15, '03 seizure never happened.

36. Plaintiff appealed to Defendant Ressing and she ~~deemed~~ upheld and condoned the clearly ill-motivated

decision because she didn't want to cause any bad blood with her cohorts who had apparently jerked plaintiff and intended to deprive plaintiff of federally protected rights, i.e. access to courts.

37. Throughout this entire operation, defendants were operating under a "code of silence", i.e. "I won't tell if you won't tell; protect our interests at all cost" which is suggested in their "code of ethics" but is patently criminal.

38. Because of defendants' concerted refusal to return plaintiff's legal property, plaintiff lost parties from his then-pending civil action <u>Jacobs v. Heck et al.</u> C.A. NO 02-1703 (W.D. Pa.) because he could not counter the claims raised in a motion to dismiss which defendants in this case had taken.

39. Further actual injury plaintiff suffered was the rejection of his claim that he exhausted administrative remedies in <u>Heck</u> because defendants in this case destroyed the documents related to that claim.

40. Defendants also destroyed irreplaceable affidavits, inmate request responses and grievances which validated plaintiff's claim in <u>Commonwealth v. Jacobs</u> NO. 2434.3463 C.D. 1447 that he was obstructed in filing a timely PCRA motion and that claim was rejected on that ground.

41. Such significant loses greatly placed plaintiff in fear of exercising his right to file grievances and

lawsuits and placed him under a tremendous psychological stress and emotional turmoil.

42. Defendants inflicted such psychological pain upon plaintiff with malice and a desire to provoke an altercation, as is their practice.

43. Defendant Beard's knowledge and condonement of the widespread retaliatory harassment practice of obstructing, delaying and destroying LTSU prisoners' legal filings contributed to the violations and resultant harm asserted herein.

44. The concerted actions and/or tactical inaction of Defendant Giddens, Beard, McConnell, Scire, Ressing, Cherico and Strickman violated plaintiff's right to access the courts and due process, to not be retaliated or conspired against, to not be defamed of his character and discriminated against, to petition the government for redress of his grievances and to be free of cruel and unusual punishment.

45. On September 16, 03, Plaintiff's cell was searched and additional legal documents were seized from plaintiff's personal possessions box.

46. These documents were seized by Defendant Lynch with Defendant Giddens' agreement.

47. Defendants Lynch, Cherico and Giddens have long histories of conducting calculated harassment cell searches and stealing LTSU prisoners' legal papers.

8

48. The documents seized consisted of two typed Declarations completed and given to plaintiff by inmate Gary Banks for purposes of attachments to his legal filings.

49. After scrutinizing the contents of the Declarations, defendant Giddens traveled to another section of the LTSV and threatened Mr. Banks with bodily harm if he continued to assist plaintiff in his legal endeavors against DOC officials.

50. Defendant Lynch issued plaintiff a disciplinary report on the basis of possessing said Declarations.

51. It is not against written DOC policy to possess Declarations made by other inmates as to what they saw or heard.

52. It is common unwritten policy of defendant Giddens, Lynch, Cherico and other LTSV officers to seize and destroy LTSV prisoners' legal documents in retaliation for filing administrative grievances and lawsuits.

53. It was defendants' intent to deprive plaintiff of his right to access the courts and grievance process without fear of retaliation.

54. Defendants did cause plaintiff to fear for his work product and personal safety for filing complaints.

55. On September 24, 03, defendant Ferson held a disciplinary hearing for defendant Lynch's report and found plaintiff guilty of possessing "contraband".

56. Defendant Ferson denied plaintiff due process

9.

by providing <u>inequbil</u> findings of fact; there by crippling plaintiffs ability to challenge the verdict on appeal.

57. Defendant Ferson violated plaintiffs due process rights by refusing to call plaintiffs properly requested witness Gary Banks for no legitimate purpose.

58. Defendant Ferson denied plaintiff due process when he found plaintiff guilty of said charge pursuant to a constitutionally deficient standard of proof, i.e. "some evidence" as opposed to "preponderance of evidence."

59. Defendant Ferson had been knowingly misapplying the legal standard at disciplinary hearings in order to deny prisoners due process.

60. Eventhough plaintiff had not violated any prison rule, defendants McCoy, Simpson, Mankey, Stickman and Bittner all acted in collusion and sustained defendant Fersons decision anyway.

61. Plaintiff does not assert a right to not have prison officials uphold disciplinary proceeding decisions, rather, to not have the appeal process compromised by prison officials to conceal unlawful conduct and deprive plaintiff of his rights.

62. All of the defendants, especially Stickman, had an improper motive to deny plaintiff due process because defendants Stickman, Cherico and Giddens used the September 16, 03 seizure as a escape goat to help conceal the September 15, 03 seizure.

10

63. As a result of Defendant Giddens, Lynch, Ferson, McCoy, Simpson, Stickman, Munkey and Bittner's concerted conduct, Plaintiff did suffer severe mental and emotional anguish, a 30 day sentence in an extremely adverse environment and denial of parole.

64. Defendants inflicted such pain upon Plaintiff with malice and a desire to see Plaintiff cut out.

65. Defendants' concerted actions also placed Plaintiff in eminent fear of engaging in litigation against DOC officials.

66. Defendant Beard has been repeatedly placed on notice of illegal practices of LTSU staff obstructing prisoners' litigation but tactically ignores and condones it.

67. Plaintiff personally put Defendant Beard on notice of the claims herein, asking him to intervene but he refused because of Plaintiff's attempt to sue him and litigation history.

68. Defendant Beard himself has been sued by other prisoners (LTSU) for condoning or tactically ignoring illegal LTSU practices.

69. But for Plaintiff filing civil rights complaints, and grievances against DOC officials, and particularly Defendants Giddens, Sire, Cherico, Lynch and Beard, none of these events would have occurred.

11

## II. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court:

a. Issue a declaratory Judgement pursuant to 28 U.S.C. § 2201 and 2202, and the Federal Rules of Civil Procedures stating that the policies, acts and omissions complained of herein violate Plaintiff's rights to due process and access to courts, to not be retaliated, discriminated or conspired against, to not be defamed of his character and have his personal property illegally destroyed, to petition the government for redress of his grievances, to not be subjected to cruel and unusual punishment and have a state agency create and maintain false business records against him.

b. Afford Plaintiff a name-clearing hearing.

c. Issue preliminary and permanent injunctions sufficient to rectify the unconstitutional acts, policies and practices complained of herein.

d. Retain jurisdiction over all of the Defendants and their agents until such time as the court is satisfied that their unlawful policies, practices and acts no longer exist and will not recur.

e. Award Plaintiff reasonable attorney fees, punitive damages and such other relief this court deems proper and just.

70. I have exhausted all available administrative remedies by using each level of the grievance process in accordance with all due rules.

I swear under the penalties of perjury that the foregoing is true and correct and based upon my own personal knowledge or belief.

Respectfully submitted,

Andre Jacobs

Andre Jacobs # 125683
Allegheny County Jail
950 Second Avenue
Pittsburgh, PA 15219-3100

Date: May /17/2006

## CERTIFICATE OF SERVICE

I, Andre Jacobs, hereby certify that I caused a true and correct copy of the within Amended Complaint to be served upon the following via first class mail:

    Mr. Scott A. Bradley
    Office of Attorney General
    564 Forbes Ave. Manor Complex
    Pittsburgh, PA 15219

Date: May /17/ 2006

_____
Andre Jacobs