IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE JACOBS, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04-1366 |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTONS, JEFFERY A. BEARD, | ) | |
| et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

## I.     Introduction

Plaintiff inmate Andre Jacobs ("Jacobs" or "plaintiff") brought this prisoner civil rights action, pro se, pursuant to 42 U.S.C. § 1983 against the following defendants: Pennsylvania Department of Corrections ("DOC"); the DOC secretary, Jeffery Beard ("Beard"); and DOC officials and employees assigned to the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh"), including Thomas McConnell ("McConnell"), Carol Scire ("Scire"), Gregory Giddens ("Giddens"), Allen Lynch ("Lynch"), Robert Bittner ("Bittner"), Captain J. Simpson ("Simpson"), Kristin P. Ressing ("Ressing"), Michael Ferson ("Ferson"), Shelly Mankey ("Mankey"), William Stickman ("Stickman"), Frank Cherico ("Cherico"), and David McCoy ("McCoy").  Jacobs asserted at trial: a) federal claims under § 1983 for violations of his constitutional right to access to the courts, retaliation and conspiracy, and b) a Pennsylvania state claim for defamation.

Commencing on November 3, 2008, plaintiff's claims were tried before a jury. (See Trial Tr. 1, Nov. 3, 2008 (ECF No. 165)). On November 24, 2008, the jury returned a verdict in favor of defendants Lynch, Bittner, Simpson, Ressing, Ferson, Mankey, Stickman, Cherico, McCoy and Beard on all claims. (See Verdict Slip 2-5, dated Nov. 24, 2008 (ECF No. 193)). The jury found against defendants Giddens and McConnell on plaintiff's access to the courts claim (Id. at 1, 2); against defendants Giddens, Scire and McConnell on plaintiff's conspiracy claim (Id. at 3); against defendants Giddens, Scire and McConnell on plaintiff's retaliation claim (Id. at 4); and against defendant Giddens on plaintiff's defamation claim. (Id. at 5.) The jury awarded compensatory damages in the aggregate amount of $120,000[1] and punitive and/or special damages in the aggregate amount of $65,000,[2] for a total award of $185,000. (Id. at 6-8.)

Prior to and following the verdict, defendants moved under Federal Rule of Civil Procedure 50(a) and (b) for judgment as a matter of law on several of plaintiff's claims. (See Trial Tr. 72-75, Nov. 6, 2008 (ECF No. 168); Trial Tr. 168-169, Nov. 17, 2008 (ECF No. 170); Trial Tr. 11-15, Nov. 24, 2008 (ECF No. 172)). On December 3, 2008, defendants filed a Rule 50 motion for judgment as a matter of law (ECF No. 136) and a brief in support (ECF No. 137). On July 31, 2009, defendants filed a supplemental brief in support of their Rule 50 motion (ECF No. 179). Plaintiff submitted written responses to defendants' Rule 50 motion. (See ECF Nos. 144-45, 185.)

---

[1] Compensatory damages were awarded in the amount of: a) $20,000 against Giddens and $10,000 against McConnell with respect to the access to the courts claim; b) $5,000 against Scire, $20,000 against Giddens and $10,000 against McConnell with respect to the retaliation claim; c) $5,000 against Scire, $20,000 against Giddens and $10,000 against McConnell with respect to the conspiracy claim; and d) $20,000 against Giddens with respect to the defamation claim. (See Verdict Slip 6-8, dated Nov. 24, 2008 (ECF No. 193)).

[2] Punitive damages were awarded in the amount of: a) $10,000 against Giddens and $5,000 against McConnell with respect to access to the courts claim; b) $5,000 against Scire, $10,000 against Giddens and $5,000 against McConnell with respect to the retaliation claim; c) $5,000 against Scire, $10,000 against Giddens and $5,000 against McConnell with respect to the conspiracy claim; and d) $10,000 against Giddens with respect to the defamation claim. (See Id.)

On September 11, 2009, the court held oral argument on the Rule 50 motion. On September 21, 2009, the court issued a memorandum opinion (the "Memorandum Opinion") granting defendants' motion with respect to the conspiracy claims against Scire and McConnell, and with respect to the access to courts claim against Scire, McConnell and Giddens. See Jacobs v. Pennsylvania Dept. of Corrs., Civ. A. No. 04-1366, 2009 WL 3055324, at **22, 27-28 (W.D. Pa. Sept. 21, 2009). (ECF No. 189.) The Rule 50 motion was denied in all other aspects. By reason of that ruling, the aggregate amount of compensatory damages awarded was reduced to $75,000 and the aggregate amount of punitive or special damages awarded was reduced to $40,000.

On October 1, 2009 defendants McConnell, Scire and Giddens filed a second renewed motion for judgment as a matter of law, pursuant to Rule 50, or for a new trial or remittitur, pursuant to Rule 59 (the "Motion") (ECF No. 196), and a brief in support (ECF No. 197). Defendants seek the following relief: 1) judgment as a matter of law in favor of Giddens on plaintiff's state claim for defamation and on his § 1983 federal claim for conspiracy; and 2) to strike or for a remittitur of amounts awarded by the jury for: a) compensatory damages for property, harm to reputation, mental anguish, and humiliation,[3] and for mental harm;[4] and b) punitive damages or special damages, as set forth more specifically below. On June 9, 2010, Jacobs filed a response to the Motion (ECF No. 223) and a brief in support (ECF No. 224).

---

[3] With respect to plaintiff's state claim for defamation, the jury awarded compensatory damages to plaintiff for harm to reputation, and for mental anguish and humiliation. With respect to plaintiff's §1983 federal claims for retaliation and for conspiracy, the jury awarded compensatory damages to plaintiff for mental harm.

[4] In their statement of the case section of defendants' brief in support of their Motion, defendants note that their motion for remittitur is for the amount awarded by the jury's verdict for compensatory damages for :

> both Property Damage and Harm to Reputation and for Mental Harm and
> Mental Anguish and Humiliation, as well as the amounts awarded by the jury's
> verdict for Punitive Damages and/or Special Damages or Punitive damages.

(See Defendants' Brief in Support of Corrections Defendants' Motion for Judgment and/or New Trial Pursuant to Fed. R. Civ.P. 50 and 59 and/or for Remittitur 3 (ECF No. 197)).

## II. Motion for Judgment as a Matter of Law or New Trial and For Remittitur

### A. Standard of Review

#### 1. Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 provides in relevant part:

**Rule 50. Judgment as a Matter of Law in a Jury Trial; Related Motion for a New Trial; Conditional Ruling**

**(a) Judgment as a Matter of Law.**

**(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

**(A)** resolve the issue against the party; and

**(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

**(1)** allow judgment on the verdict, if the jury returned a verdict;

**(2)** order a new trial; or

**(3)** direct the entry of judgment as a matter of law.

. . .

F<small>ED</small>. R. C<small>IV</small>. P. 50.

As noted above, the court deferred ruling on defendants' Rule 50(a) motion and ruled

upon defendants' Rule 50(b) motion in its Memorandum Opinion dated September 21, 2009.

Rule 50 does not provide for a second renewed motion, once defendants' Rule 50(b) motion is

decided by the court. Therefore, as discussed below under the relevant issues, the court will treat

defendants' second renewed Rule 50 motion for judgment as a matter of law on plaintiff's state

law claims for defamation and § 1983 claims for conspiracy as a motion for reconsideration[5] of

the court's Memorandum Opinion.

### 2. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides, in relevant part:

(1) **Grounds for New Trial**. The court may, on motion,
grant a new trial on all or some of the issues – and to any
party – as follows:

(A) after a jury trial, for any reason for which a new
trial has heretofore been granted in an action at law
in federal court; . . . .

---

[5] Defendants did not file a motion for reconsideration, but filed a renewed motion for judgment as a matter of law. Defendants, however, are in essence requesting that the court reconsider its ruling that plaintiff adduced evidence sufficient to support the jury's verdict with respect to plaintiff's defamation claim against Giddens. A motion for reconsideration is granted only if one of three situations is shown: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993).

> Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. . . . Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly.

Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (internal citations omitted). Defendants do not argue that new evidence is available or that there is a change in the controlling law; defendants' challenge appears to be based upon the need to correct a clear error of law or to prevent manifest injustice.

FED. R. CIV. P. 59(a)(1).

Rule 59(a) does not set forth specific grounds on which a court may grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)); see Coney v. NPR, 312 F. App'x 469, 471 (3d Cir. 2009). The scope of a district court's discretion in evaluating a motion for a new trial depends upon whether the motion is based upon a prejudicial error of law or a verdict alleged to be against the weight of the evidence. See Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). When the motion involves a matter within the sound discretion of the trial court – such as the court's evidentiary rulings, points of charge to the jury, or a prejudicial statement made by counsel – the district court has wide latitude in ruling on the motion. Foster v. Nat'l Fuel Gas Co., 316 F.3d 424, 429-30 (3d Cir. 2003).

### 3. Motion for Remittitur

Federal Rule of Civil Procedure 59 provides, in relevant part:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

FED. R. CIV. P. 59(e).[6]

---

[6] Compare Federal Rule of Civil Procedure 60(b), which provides in relevant part:

> **Rule 60. Relief from a Judgment or Order**
>
> . . .
>
> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

Under Rule 59, a party may move to alter or amend a judgment "'to correct clear error [of law] or prevent manifest injustice.'" Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 546 (3d Cir. 2010) (quoting N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (alteration in original)). A motion to alter or amend judgment is subject to the "sound discretion of the district court." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001).

**B.     Discussion**

In the Motion defendants request the court to reconsider in part the Memorandum Opinion, which dealt with defendants' previous Rule 50 motions for judgment as a matter of law. See Jacobs, 2009 WL 3055324. In the Memorandum Opinion the court determined, among other things: 1) plaintiff adduced evidence at trial sufficient to support the jury's verdict related to plaintiff's state claim of defamation and his § 1983 federal claim of conspiracy against Giddens; and 2) plaintiff did not adduce evidence sufficient to support the jury's verdict related to plaintiff's § 1983 federal claims of conspiracy against McConnell and Scire. Id. at **8, 12, 13.

---

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

**(c) Timing and Effect of the Motion.**

**(1)** *Timing.* A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

. . .

FED. R. CIV. P. 60(b).

Defendants now: 1) pursuant to Rule 50, a) renew their motion for judgment as a matter of law on plaintiff's state law defamation claim against Giddens; and b) request the court to enter judgment as a matter of law in favor of Giddens and against plaintiff on the § 1983 claim of conspiracy based upon the court's determination in the Memorandum Opinion that there was not sufficient evidence of record to hold Scire or McConnell liable for conspiracy[7]; 2) pursuant to Rule 59(e), move to strike the verdict or for remittitur a) to the extent the jury awarded compensatory damages for: i) plaintiff's property with respect to his § 1983 claims of retaliation against defendants McConnell and Giddens, and conspiracy against Giddens, in the aggregate amount of $25,000; ii) mental harm with respect to plaintiff's § 1983 retaliation claims against McConnell, Scire and Giddens and § 1983 conspiracy claim against Giddens, in the aggregate amount of $30,000; and iii) harm to plaintiff's reputation in the amount of $10,000 and for mental anguish and humiliation in the amount of $10,000 with respect to his state law claim for defamation against Giddens; and b) to the extent the punitive damage awards are excessive under the circumstances. The court will address each request.

      1.    <u>Rule 50 Issue</u>

            a.    <u>State Law Defamation Claim against Giddens – judgment as a matter of law</u>[8]

Defendants argue that Giddens is entitled to judgment on plaintiff's state law defamation claim as a matter of law. In the alternative, defendants argue that Giddens is entitled to judgment on plaintiff's defamation claim because the verdict was against the weight of the evidence. Defendants maintain that Giddens is entitled to sovereign immunity because the evidence

---

[7] Defendants appear to make this request pursuant to Rule 50. The court will treat it similar to defendants' motion to reconsider the court's Memorandum Opinion on defendants' Rule 50(b) motion.

[8] As noted above, the court will treat this issue as a motion to reconsider its ruling that plaintiff adduced evidence sufficient to support the jury's verdict with respect to plaintiff's state law defamation claim against Giddens.

established that he wrote the purportedly defamatory statement while he was "employed as the LTSU Lieutenant on the 2-10 shift at SCI-Pittsburgh." (Defs.' Br. in Supp. Mot. 5 (ECF No. 197)). In support, defendants rely upon a three-part test set forth in <u>Ismael v. Ali</u>, No. Civ. A. 99-1932, 2007 WL 336286 (W.D. Pa. Jan. 31, 2007), to determine whether an employee is acting within the scope of his employment at the relevant time:

> An employee is acting within the scope of his employment if the conduct: (1) is the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master. <u>Brumfield v. Sanders</u>, 232 F.3d 376, 380 (3d Cir. 2000) (citing Restatement (Second) of Agency § 228 (1958)).

<u>Ismael</u>, 2007 WL 336286, at *2.

Defendants argue that, based upon the analysis set forth in <u>Ismael</u>, Giddens was acting within the scope of his employment when he wrote the allegedly defamatory statement.[9] Defendants assert that Giddens indicated that it was part of his duties to respond to inmate grievances and that he responded to plaintiff's grievance within the time and space limits of his job. Defendants conclude that Giddens' response to plaintiff's grievance was actuated by a

---

[9] Defendants impliedly argue in a footnote (Defs.' Br. 6 n.2 (ECF No. 197)) that the court should not have sent the question with respect to whether or not Giddens defamed Jacobs to the jury, quoting: "'When there is no question as to the circumstances under which an allegedly defamatory communication was made, the question of whether that communication was privileged is a question of law to be decided by a judge.'" <u>Appel v. Twp of Warwick</u>, 828 A.2d 469, 472 (Pa. Commw. Ct. 2003) (citing <u>Montgomery v. Dennison</u>, 69 A.2d 520, 525 (Pa. 1949)). At the final charge hearing, the court advised the parties that plaintiff's defamation claim was governed by Pennsylvania law and that the issue whether Giddens was acting within the scope of his employment when he responded to plaintiff's grievance was a matter that the jury would have to resolve, and the court could reconsider that matter on a post-trial motion. (<u>See</u> Trial Tr. Nov. 17, 2008 at 141-42 (ECF No. 170)). The instant case is readily distinguishable from <u>Appel</u>. Here the court specifically indicated that the jury would have to resolve the question whether, under the circumstances in which Giddens made the allegedly defamatory statement, Giddens was acting within the scope of his employment. The jury verdict shows that question was answered in the negative. Even if the court had to resolve the ultimate question about whether Giddens' statement was privileged, the court – considering the jury's determination – would have ruled that it was not. The question involving scope of employment required a factual determination whether the conduct of Giddens fell within the three-part test. That issue was resolved by the jury in favor of Jacobs. Even if the matter is one for the court to determine, the court will view the jury's determination as at least advisory. There is evidential support for the verdict because the DOC's policies precluded Giddens from responding to the grievance at issue (<u>see</u> discussion infra at 15) and he knew about that policy, showing that Giddens' conduct was not actuated, even in part, by a purpose to serve the DOC.

purpose to serve the master. Defendants rely upon, among other decisions, <u>Yakowicz v.</u>

<u>McDermott</u>, 548 A.2d 1330 (Pa. Commw. Ct. 1988) (finding that an allegedly defamatory

written performance evaluation by the Commonwealth agency's deputy chief counsel was within

scope of his duties and therefore he was entitled to the protections of sovereign immunity), and

<u>Brumfield v. Sanders</u>, 232 F.3d 376 (3d Cir. 2000).

Defendants contend that the court - in its Memorandum Opinion – mischaracterized

plaintiff's defamation claim as "'based upon statements made by Giddens in connection *with a*

*misconduct report issued against [Plaintiff].*'" (Defs.' Br. in Supp. Mot. 7 (ECF No. 197)

(quoting <u>Jacobs</u>, 2009 WL 3055324, at *4 (emphasis added)). Defendants note that the

defamatory statement was contained in a response to a grievance plaintiff submitted with respect

to the confiscation of his legal papers from another inmate – as opposed to a misconduct report

which could have resulted in a discipline against Jacobs. Defendants argue that this distinction

undermines the court's conclusion that

> [f]rom this evidence, the jury could have found that Giddens'
> actions were not 'clearly incidental' to the business of the DOC or
> to his duties as a corrections officer, since Giddens was not acting
> in the interests of his employer, but rather was working in his own
> interest to discredit Jacobs and cover up Jacobs' grievances against
> him.

<u>Id.</u> (quoting <u>Jacobs</u>, 2009 WL 3055324, at *8). Defendants argue that the instant case is not

similar to the decision in <u>Shuman Estate v. Weber</u>, 419 A.2d 169 (Pa. Super. Ct. 1980), relied

upon by the court in its Memorandum Opinion, where the Pennsylvania Superior Court

determined that an employee pursuing a personal errand was not acting within the scope of his

employment. Instead, defendants direct the court's attention to decisions they believe are more

closely related to the instant matter, i.e., the decisions in <u>Yakowicz</u> (holding that allegedly

defamatory statements in a written performance evaluation by a Commonwealth agency's deputy

chief counsel were within scope of his duties) and <u>Brumfield</u> (holding that statements, including false statements, of federal prison employees given in the course of an official governmental investigation are insulated against a state tort claim of defamation).

Plaintiff responds that defendants presented the same argument that Giddens was acting within the scope of his employment when he defamed plaintiff's character at least two times before and the court rejected that argument both times. Plaintiff argues that the distinction between whether the court referred to the DOC document containing the defamatory comments as a misconduct report or a grievance is of no moment. Plaintiff contends that it is what Giddens wrote in the document that gives rise to his liability for defamation against Jacobs and whether he was acting within the scope of his employment when he did so.

Defendants essentially reargue the same issues decided by the court in its Memorandum Opinion related to this matter. The court concluded that plaintiff presented sufficient evidence as a matter of law with respect to his defamation claim against Giddens. With respect to plaintiff's defamation claim, this court stated:

> Jacobs brought a state law defamation [claim] against defendant Giddens, alleging that Giddens defamed him by making false statements that Jacobs fabricated the <u>grievance</u> in which he claimed that his legal documents were improperly confiscated. At trial, defendant Giddens raised the affirmative defense of sovereign immunity. The jury found for plaintiff on the defamation claim. (Trial Tr. Nov. 19 & 24, 2008 at 6.)
>
> The jury returned a verdict in favor of Jacobs and against Giddens with respect to Jacobs' defamation claim based upon statements made by Giddens in connection with a <u>misconduct</u> report issued against Jacobs. Prior to submitting the claim to the jury, defendants argued that the defamation claim should be dismissed because Giddens was acting within the scope of his employment when he issued the <u>misconduct</u> report and was covered by sovereign immunity. This court determined that there were genuine issues of material fact with respect to whether Giddens was acting within the scope of his employment when he made the allegedly defamatory

> statements and submitted the issue to the jury. Giddens argues that
> the jury had insufficient evidence to conclude that he was not
> acting within the scope of his employment at the time of the
> defamatory statements.

Jacobs, 2009 WL 3055324, at *4 (emphasis added).

In the Memorandum Opinion the court referenced both the grievance submitted by

plaintiff – and to which Giddens responded - and a misconduct report issued against Jacobs by

Giddens.  Upon review of the record, the court finds that Giddens' defamatory statement about

Jacobs was made in Giddens' response to Jacobs' grievance involving Giddens [10] – not in a

misconduct report.  In fact, no misconduct report was filed against Jacobs with respect to the

matters referred to in the defamation statement.  Defendants' contention, however, that the

court's ruling on the issue is undermined by such distinction is not persuasive in the specific

context of this case; rather, the mistake amounts to no more than harmless error.  United States v.

Riley, 621 F.3d 312, 323-24 (3d Cir. 2010) (finding that the test for harmless error is whether it

is highly probable that the error did not contribute to the judgment).  When making a harmless

error determination, the Court of Appeals for the Third Circuit, in Ditch v. Grace,  479 F.3d 249,

256 (3d Cir. 2007), instructed:

> "the crucial inquiry is the impact of the error on the minds of the
> jurors in the total setting." *Hassine [v. Zimmerman],* 160 F.3d
> [941] at 955 [(3d Cir. 1998)] (citations and internal quotation
> marks omitted). "While the nature of the evidence against [Ditch]
> is important, we must also examine the phases of the trial affected
> by the error, and determine whether the error had a substantial
> influence on the verdict despite sufficient evidence to support the
> result apart from the error." *Id.* "In doing so, we must of necessity
> weigh the impact of evidence on the jury and cannot help but make
> a judgment as to how the jury would reasonably perceive [Ditch's]
> version of the events with and without the [denial of counsel]
> violation." *Id.*

---

[10] Giddens' response to plaintiff's grievance was, "[y]our claim of 151 pages is an outright fabrication and subject to misconduct for lying."  (See Trial Tr. Nov. 5, 2008 (ECF No. 167 at 45)).

<u>Ditch</u>, 479 F.3d at 256.

As noted, no misconduct was issued against Jacobs for the grievance. A misconduct was referenced in Giddens' response to the grievance. During the trial, plaintiff requested the court's permission to ask Stickman, the deputy secretary for the western region of the DOC at the relevant time, whether he was familiar with the misconduct that was referenced in the grievance at issue. The following colloquy took place:

| | |
|---|---|
| JACOBS: | Just briefly, Your Honor. Throughout the course of this litigation, as well as this grievance process, a misconduct number was referenced in these grievances, as well as in Defendant Stickman's response to my admissions. I would like permission to ask Mr. Stickman questions concerning this misconduct and whether or not it corresponds with this particular grievance. |
| COUNSEL FOR DEFENDANTS: | I'm not sure I understand what he's asking. |
| COURT: | He's saying there's a misconduct that's referenced in the grievance. He wants to ask him if he's familiar with the misconduct. |
| . . . | |
| JACOBS: | In this, in these admissions he stated that the grievance No. 63417 corresponds with the misconduct that was issued to Mr. Lyons on 8/14/2003. This was all part of the conspiracy to cover up this incident. I got evidence that this misconduct does not correspond with the grievance. It has nothing to do with the grievance. So, this misconduct was entered all, into this incident in furtherance of this conspiracy to conceal this incident. |
| . . . | |
| COUNSEL FOR DEFENDANTS: | He can argue that, but I don't know - - I mean, the request for admissions doesn't say there was a conspiracy, and that we - - |
| THE COURT: | Well, the admission was denied; is that correct? |
| . . . | |

JACOBS:                   No.  The admission, no.  The admission states that, that
                          they do correspond.  He, that Mr. Stickman said that this
                          misconduct relates to that grievance.
                          . . .

                          I want to introduce this evidence to show it does not.

COUNSEL FOR
DEFENDANTS:               Can I see the admission again?  The question is grievance
                          No. 63417 does not correspond with the misconduct report
                          580895 issued to inmate Eric Lyons.  This statement is
                          denied as stated.  It's the response.

JACOBS:                   So, he's denying that the misconduct does not correspond
                          with the grievance. . . .  It either does or it doesn't.

COUNSEL FOR
DEFENDANTS:               Well, for one thing, I don't believe that the grievance – the
                          misconduct report number is, is not the misconduct report
                          number that was issued to inmate Eric Lyons.  So, that may
                          have been the basis for the denial.

JACOBS:                   That's the number that's on the form.  That's the one that
                          they reference.

COUNSEL FOR
DEFENDANTS:               Do we have the misconduct that was issued to Eric Lyons?

JACOBS:                   Here it is, right here.
. . .

COUNSEL FOR
DEFENDANTS:               I see my confusion.  This is not the misconduct we've been
                          talking about throughout the whole trial.  It's an entirely
                          new misconduct.

JACOBS:                   It's nothing new about it.  It's in the grievance response.

COUNSEL FOR
DEFENDANTS:               This misconduct doesn't deal with either the 151 or the two
                          pages.

JACOBS:                   That's my point.  That's my point.  This misconduct was
                          used in part of the grievance process as part of the
                          conspiracy to cover up the actual incident that took place.
                          They try to make – they never made reference to the 151,

                                         14

the 151 pages that was taken.  They didn't reference that misconduct in there.  They referenced some other misconduct.

Trial Tr. 122-26 , Nov. 17, 2008 (ECF No. 170).

This mistake in the Memorandum Opinion – referring to a misconduct rather than a grievance – is harmless because Giddens' response to plaintiff's grievance was not part of his duties.  The crux of the issue is whether evidence was adduced to show that Giddens' response was not within the scope of his employment.  Plaintiff offered evidence to show that Giddens' response to his grievance involving Giddens was against an express policy of the DOC.  (Trial Tr. 117, Nov. 17, 2008 (ECF No. 170); Pl.'s Ex. 36, DOC Policy Statement VI.B.1.e. ("If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with **DC-ADM 804**, the Facility Grievance Coordinator [shall] designate a staff member to serve as the Grievance Officer for that issue.  <u>The Facility Coordinator shall not designate a staff member to serve as a Grievance Officer who was identified by the inmate as being involved in the issue</u>.) (underline emphasis added).

In plaintiff's cross-examination of Stickman, the following testimony took place:

| | |
|---|---|
| JACOBS: | Is it appropriate for the person that is being complained against to be the investigating officer? |
| STICKMAN: | The majority of the time that's not how it was done.  In rare occasions, or on some - - |
| JACOBS: | Your Honor, I'm just asking about the policy, statement of policy. |
| | Is it appropriate under the DOC? |
| STICKMAN: | At times. |
| JACOBS: | It is appropriate? |
| STICKMAN: | At times. |

JACOBS:             For the person that's being complained against to
                    investigate the complaint against them?

STICKMAN:           Not always, but there were instances where it was done.

JACOBS:             Is that appropriate under the policy?

STICKMAN:           I believe, I believe the policy covers it, and it can happen,
                    yes.

JACOBS:             Do you recognize that policy.  It's the DC Administrative
                    804.  And this policy governs the procedures for processing
                    inmate grievances; correct?

STICKMAN:           Yes.

JACOBS:             Are you familiar with that policy?

                    . . .

                    Generally

STICKMAN:           Generally?  It was a part, yes part of 14 volumes of policies
                    that I dealt with.

JACOBS:             And you just stated it's appropriate sometimes to appoint
                    the same person being complained against as an
                    investigating officer?

STICKMAN:           I said, I said that, yes.  I said, I believe it's appropriate,
                    given circumstances at the Institution that may necessitate
                    that.

JACOBS:             OK.  [I would] [l]ike to draw your attention to the
                    highlighted portion.

STICKMAN:           Um-hum.  Okay.

JACOBS:             Does that state that it's appropriate to appoint the same
                    person being complained against as the investigating
                    officer?

STICKMAN:           No.  It says the facility coordinator shall not designate a
                    staff member to serve as a grievance officer who is

|          |                                                                     |
|----------|---------------------------------------------------------------------|
|          | identified by the inmate as being involved in the issue. That's what this states. |
| JACOBS:  | States that?                                                         |
| STICKMAN: | That's what this states, yes.                                      |
| JACOBS:  | That such a person shall not be appointed; correct?                 |
| STICKMAN: | That's what this states, yes.                                      |

Id. at 118- 20.

Giddens' own testimony also supports the jury's verdict. On direct examination, Giddens testified:

|                              |                                                                                                                         |
|------------------------------|-------------------------------------------------------------------------------------------------------------------------|
| DEFENDANTS' COUNSEL:         | Lieutenant Giddens, as part of your responsibilities as a supervisor in the LTSU, did you have any role in the grievance process? |
| GIDDENS:                     | I did.                                                                                                                   |
| COUNSEL FOR DEFENDANTS:      | What was that role?                                                                                                      |
| GIDDENS:                     | Primarily if a grievance was filed on staff that were assigned to the six to two shift within the LTSU, that grievance would be assigned to me. |
| COUNSEL FOR DEFENDANTS:      | Was there a particular reason you would be assigned to address a grievance on the six to two shift?                      |
| GIDDENS:                     | Because I was not a party to the grievance and because it would minimize or eliminate as best we could, I guess, the idea of impropriety. |
| COUNSEL FOR DEFENDANTS:      | Was that in relation to the DOC policy which indicated that individuals involved in a grievance should not be responding? |
| GIDDENS:                     | That's correct.                                                                                                         |

. . .

| | |
|---|---|
| COUNSEL FOR DEFENDANTS: | Placing before you Defendant's Exhibit No. 2.  Start with the bottom.<br>Is that your name and signature that appears on Exhibit 2? |
| GIDDENS: | Yes. |

. . .

| | |
|---|---|
| COUNSEL FOR DEFENDANTS: | Explain to the jury what this document is and what role you took in preparing it. |
| GIDDENS: | It's a DC-804 Part 2, the official response to an inmate's grievance. |
| COUNSEL FOR DEFENDANTS: | This is the response you made to the grievance Mr. Jacobs filed at No. 63417? |
| GIDDENS: | That's correct. |
| COUNSEL FOR DEFENDANTS: | As you sit here today, do you agree with the response that was given? |
| GIDDENS: | I do not.  I erred in my response on that document. |
| COUNSEL FOR DEFENDANTS: | Can you explain to the jury the nature of that error? |
| GIDDENS: | In hindsight, as I have gone through it in my mind, I can only guess.  At the time that I received the inmate's grievance, I went through records searching for misconducts related to Inmate Jacobs and the seizure of property.<br>During that research, I was able to come up with one misconduct which related to two pages of legal material that was seized from Inmate Jacobs and belonged to Inmate Banks.<br>So at that point, I could not find any other misconducts that related to or confiscation slips that related to Mr. Jacobs or seizure of alleged illegal property, I |

responded to his grievance in kind with the information I was able to gather during my investigation which related to the misconduct we previously reviewed, wherein Sergeant Lynch issued a misconduct for two pages of legal material that was in his possession that appeared to belong to Inmate Banks that had his name on it.

     Based upon that investigation, the information I was able to find, to me he was fabricating the 151 pages. I had no recollection of the 151 pages as previously on the misconduct. I didn't see it. I just didn't recall it. I can't answer as to why. I just didn't.

(Trial Tr. 148-51, Nov. 10, 2008 (ECF No. 173)).

On cross-examination, Giddens testified:

| | |
|---|---|
| JACOBS: | Showing you what has been marked as Plaintiff's Exhibit No. 8, do you recognize that document? |
| GIDDENS: | I have some recollection, yes. |
| JACOBS: | Does that refresh your recollection as to whether or not I made a complaint against you prior to events in question? |
| GIDDENS:<br>. . . | I believe that's one I had seen previously. |
| JACOBS: | Do you agree this particular grievance involved you and Defendant Cherico? |
| GIDDENS: | I believe that's part of your allegation, yes. |
| JACOBS: | That's in this grievance? |
| GIDDENS: | Yes. |
| JACOBS: | You stated you generally don't respond to a grievance if it's against you? |
| GIDDENS: | That's policy, correct. |
| JACOBS: | You are expected to abide by that policy, correct? |
| GIDDENS: | I would expect so, yes. |

JACOBS:            Would you respond to a grievance of this nature, a direct complaint against you?

GIDDENS:           I believe I did respond to this one.  So obviously, yes.

JACOBS:            You also stated that in the event that you did respond to a grievance, it would have had to been issued of timeliness or the unavailability of another person to respond?

GIDDENS:           That would be my recollection, yes.

JACOBS:            So it is your testimony that had to be the case in this particular --

GIDDENS:           That is not my testimony.

JACOBS:            I'm asking you.

GIDDENS:           I don't know.  I don't know why I responded.  Generally, that was the rationale for responding to a grievance that I was involved in.  Specifically to this grievance, I can't answer that.  I don't know why.

JACOBS:            Do you agree you're basically investigating yourself?

GIDDENS:           I would agree.

(Id. at 154-56.)

Thus, there is sufficient evidence of record to support the jury's finding that Giddens  was not acting within the scope of employment.  The record supports a finding that he intentionally or recklessly mischaracterized the number of legal document pages Jacobs accused him of taking.   Stickmans' and Giddens' testimonies with respect to whether a DOC employee's response to an inmate's grievance involving that employee is against DOC policy fully supports the jury's verdict that Giddens' actions were not made within the scope of his employment, i.e., that his conduct was not "actuated at least in party, by a purpose to serve the master."  Ismael, 2007 WL 336286, at *2.

Defendant's reliance on Ismael, Yakowicz, and Brumfield is misplaced.  None of these decisions involved a situation where the action of an employee in which a defamatory statement was made violated an express policy of the employer.  In Ismael, the district court relied upon the three-part test set forth in Brumfield, in determining that two university employees acted within the scope of their employment when they authored letters accusing the plaintiff of stealing money from participants in an academic conference.  Ismael, 2007 WL 336286, at *1.  The court found that, "[u]nder the applicable law, there was no genuine dispute that defendants' work on the Conference served the interest of [the university], to an appreciable extent, and involved no abandonment of or opposition to [the university's] interest."  Id. at *4.

In Yakowicz, the plaintiff deputy counsel of the Pennsylvania Department of Treasury deputy sued his supervisor chief deputy for false light and defamation related to a written and distributed adverse performance evaluation.  Yakowicz, 548 A.2d at 1331.  On appeal, the Commonwealth Court of Pennsylvania reversed the trial court's denial of the defendant's posttrial motion for judgment notwithstanding the verdict ("JNOV") on the defamation claim.  The appellate court determined that the deputy chief counsel enjoyed sovereign immunity under 42 PA. CONS. STAT. § 8522.[11]  Id. at 1333.  The appellate court reasoned that the defendant's actions were done within the scope of his duties because he was an employee of a Commonwealth agency at the time he wrote the memo which related to the plaintiff's performance evaluation and that "[t]he act of publishing a defamatory performance evaluation does not fall within any of the nine exceptions to immunity provided . . . 42 PA. CONS. STAT. § 8522(b)."  Id. at 1334.  None of the defendant's actions, however, were done in direct contravention of any express employer policy.

[11] Section 8522 covers "Commonwealth parties."  42 PA. CONS. STAT. § 8522.  An employee of a Pennsylvania state agency is a "Commonwealth party" if the act of that employee is "within the scope of his office or employment." Id. § 8501.

In Brumfield, a federal employee of the Bureau of Prisons ("BOP") sued five of his fellow employees for defamation, among other claims, predicated upon written affidavits and oral statements given by the defendants in a BOP investigation concerning the plaintiff's unprofessional conduct. Brumfield, 232 F.3d 378. The district court dismissed the complaint and the plaintiff appealed. Id. at 379. The threshold question on appeal pertained to whether the conduct on which the plaintiff's claims were based occurred within the scope of the defendants' employment. Id. Analyzing the issue under the definition of conduct '"within the scope of employment'" set forth in the RESTATEMENT (SECOND) OF AGENCY, the Court of Appeals for the Third Circuit stated:

> According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master. . . ."

Brumfield, 232 F.3d at 380 (quoting RESTATEMENT (SECOND) AGENCY § 228). Aside from arguing that the defendants' actions did not comport with the third factor, the plaintiff contended that the defendants' actions were outside the scope of their employment because they lied during the course of the investigation. In recognizing that Pennsylvania courts accept "the Restatement (Second) Agency's definition of 'conduct within the scope of employment,'" the Court of Appeals for the Third Circuit stated:

> Although the individual defendants were required to provide only truthful responses to questions posed in the investigation, "an act, although forbidden or done in a forbidden manner, may be within the scope of employment." Restatement (Second) of Agency § 230; *Aliota [v. Graham]*, 984 F.2d [1350] at 1358. Under Pennsylvania law, even unauthorized acts may be within the scope of employment "if they are clearly incidental to the master's business." *Shuman Estate v. Weber*, 276 Pa.Super. 209, 216, 419 A.2d 169 (1980). . . .

Brumfield, 232 F.3d at 381 (footnote omitted).

The court of appeals reasoned that the defendants' actions were incidental to the BOP's business because the defendants were encouraged to come forward and asked to and did sign the affidavits which contained the alleged defamatory statements about the plaintiff. Id. The court of appeals noted the "'[BOP's] policy makes clear that it was within the scope of Defendants' employment duties to cooperate with investigators of the [OIA] and provide potential information regarding any unprofessional conduct by Brumfield.'" Id. (quoting Brumfield, 50 F. Supp.2d at 384)).

Such is not the instant case. Here, defendants omit the dispositive caveat expressly provided in the DOC policy – "[t]he facility coordinator shall not designate a staff member to serve as a Grievance Officer who was identified by the inmate as being involved in the issue." (See Pl.'s Ex. 36, DOC Policy Statement VI.B.1.e). There is support in the record for a fact-finder to conclude that Giddens knew about that policy and that he was expected to abide by that policy. Therefore, defendants' argument that Giddens' response to plaintiff's grievance was within the scope of his employment - on the basis that such response was part of Giddens' duties which he performed within the time and space limits of his job - is fatally flawed. Because plaintiff identified Giddens as being involved in the grievance, Giddens was prohibited by DOC policy from responding to it. In the Memorandum Opinion the court indicated that the jury could find that Giddens' comments in issue were not made within the scope of his employment on the basis that Giddens was "working in his own interest to discredit Jacobs and cover up Jacobs' grievances against him." Jacobs, 2009 WL 3055324, at *8. Given the unique circumstances of this case, the court cannot find a basis on which to reexamine that ruling. (See Trial Tr. Nov. 5, 2008 at 45 (ECF No. 167)).

b.    §1983 Conspiracy Claim Against Giddens – judgment as a matter of law

Defendants argue that the judgment against Giddens on plaintiff's claim for conspiracy must be vacated.  Defendants note that the jury found in favor of all but three of the defendants on this claim.  Of the remaining three defendants, – Giddens, Scire and McConnell – this court granted, in part, defendants' initial Rule 50(b) motion, and judgment was entered in favor of Scire and McConnell – leaving Giddens as the sole defendant remaining in Jacobs' §1983 conspiracy claim.  Defendants maintain that Giddens is entitled to judgment as a matter of law on plaintiff's conspiracy claim because all the other defendants had judgment on this claim entered in their favor, thereby eviscerating any basis in the trial record to support a finding that Giddens conspired with anyone to violate plaintiff's rights.  Defendants argue that evidence in the record no longer supports the existence of a conspiracy, because a conspiracy, by definition, requires '"two or more persons to do an unlawful act, or to do a lawful act by unlawful means, or to accomplish an unlawful purpose. "'  Jacobs, 2009 WL 3055324, at *11 (quoting Franklin Music Co. v. Am. Broadcasting Cos., 616 F.2d 528, 534 (3d Cir. 1979)).

Plaintiff argues that defendants' argument is based upon a mistaken belief that the Giddens is automatically exonerated of the conspiracy claim because all the co-conspirators have been exonerated.  In support, plaintiff relies upon, among other decisions, United States v. Fox, 130 F.2d 56 (3d Cir. 1942) (holding that a conspiracy may be established even though one of the two parties named is not a member of the conspiracy, if the evidence showed that there were other persons in existence, and one or more were parties to the conspiracy), and Didenti v. United States, 44 F.2d 537 (9th Cir. 1930) (stating that all parties to a conspiracy need not be named in the indictment).  See United States v. Obialo, 23 F.3d 69, 72 (3d Cir. 1994) ("The failure of the government to be able to name and personally identify the other conspirator is not

fatal to a conspiracy conviction.") (citing <u>Rogers v. United States</u>, 340 U.S. 367, 375 (1951)

("the identity of the other members of the conspiracy is not needed, inasmuch as one person can

be convicted of conspiring with persons whose names are unknown.")).[12]  Plaintiff relies upon

decisions in criminal cases to support of his position.  Nonetheless, the same rationale holds true

in the civil context of conspiracy.  In order for one member of a civil conspiracy to be liable, not

all members of the conspiracy need be named defendants or joined as defendants.  See <u>Alexander

& Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.</u>, 596 A.2d 687, 698 (Md. App. 1991)

("the law permits a plaintiff to recover against any one or more of the conspirators without

naming them all as defendants").  Thus, a conspiracy may be maintained against only one

conspirator.  See <u>Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.</u>, 494 F. Supp.

1139, 1147 (D. Del. 1980) ("A conspiracy is a tort for which the conspirators are jointly and

severally liable, and a case cannot be dismissed for nonjoinder even though only one conspirator

is subject to the jurisdiction of the court.").  Here, sufficient evidence in the record supports the

jury's verdict that Giddens conspired with another to violate plaintiff's rights.

     In considering whether plaintiff adduced sufficient evidence to support a claim of

conspiracy against McConnell, the court - in its Memorandum Opinion - discussed the testimony

of inmate Eric Lyons ("Lyons").  Lyons' testimony provides sufficient evidence in the record to

support a claim of conspiracy against Giddens.  Concerning a conversation between Giddens and

Lyons about the confiscation of plaintiff's legal documents, Lyons testified:

> JACOBS       After Defendant Giddens told you that he would
> have been a fool to return all the legal documents,
> did he tell you how they would be dealt with after

---

[12] Although <u>United States v. Obialo</u>, 23 F.3d 69 (3d Cir. 1994), is a criminal case, the element with respect to two or
more individuals is the same in a criminal offense and a civil tort.  See <u>Beidleman v. Stroh Brewery Co.,</u>  182 F.3d
225, 235-36 (3d Cir. 1999) ("Under Pennsylvania law, civil conspiracy is a 'combination of two or more persons to
do an unlawful act or criminal act or to do a lawful act by unlawful means or for an unlawful purpose.'") (quoting
<u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814 (3d Cir.1974) (citing <u>Landau v. Western Pa. Nat'l Bank</u>, 282 A.2d
335, 338 (1971))).

|        |                                                                                    |
|--------|------------------------------------------------------------------------------------|
|        | they were sent to security?                                                        |
| LYONS  | He said that it was not likely that you'll get it back and it would probably be destroyed, according to someone – information that someone told him. He said **he decided it with someone**. **He didn't mention any names, but he said he discussed the matter with somebody.** He said it would be not likely that you'll get it back, you know.  I just told him to forget about it. |
| JACOBS | You said he discussed it with someone, but you do not remember the person that he discussed it with? |
| LYONS  | No. **He did not mention the individual's name that he discussed it with**, the material itself, but he said it was not likely that you'll get it back. |

<u>Jacobs</u>, 2009 WL 3055324, at *12 (emphasis added.)  Considering that the burden of proof in a civil case is by a preponderance of the evidence, this testimony is sufficient for the jury to find that Giddens conspired with another to deprive plaintiff of his legal rights.  Thus, defendants' argument that there is no lawful basis in the record to support a finding that the sole remaining defendant is liable to plaintiff on the conspiracy claim is without merit.  Defendants' Motion for judgment as a matter of law on plaintiff's claim of conspiracy against Giddens will be denied.

2.     <u>Strike Verdict or for Remittitur of Award</u>

a.     <u>Compensatory Damages</u>

Defendants move to strike the verdict or for remittitur, pursuant to Rule 59(e), to the extent the jury awarded compensatory damages for plaintiff's property, mental harm, harm to his reputation, mental anguish, and humiliation.  Defendants contend that "remittitur is appropriate" and request the court to reduce the amounts of compensatory and punitive damages the jury awarded plaintiff.

Plaintiff responds that all defendants' damage-related arguments – except for the alleged excessiveness related to the punitive damages – are new arguments raised for the first time, which defendants could have raised previously, and are now waived for failure to do so sufficiently at an earlier time. Plaintiff maintains that defendants' new arguments include any contention that: 1) compensatory damages are barred because he allegedly did not prove a physical injury, 2) plaintiff did not suffer harm to his property, reputation, or mental anguish and humiliation; and 3) plaintiff allegedly failed to present evidence of harm to his property or reputation. Plaintiff asserts defendants' arguments with respect to these issues amount to an avoidance.[13]

### i. Property Damage

The remaining aggregate award of compensatory property damages is $25,000. This amount includes $5,000 against McConnell, $10,000 against Giddens on plaintiff's § 1983 retaliation claim and $10,000 against Giddens on plaintiff's § 1983 conspiracy claim. Defendants request the court strike the entire amount of the jury's award of compensatory property damages. Defendants point to the jury instructions on compensatory property damages in which the court instructed:

> If you find the defendant liable, then you must consider the issue of compensatory damages. You must award plaintiff an amount that will fairly compensate him for any injury actually sustained as a result of that defendant's conduct.
> . . .

---

[13] Plaintiff cites <u>Black's Law Dictionary</u> 125 (5th ed. 1979), defining avoidance as:

> **Avoidance.** A making void, useless, empty, or no effect; annulling, cancelling; escaping or evading. . . .
> In pleading, the allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect. Fed. R. Civil P. 8(c)). See also **Affirmative defense**. . . .

<u>Id.</u> at 125 (emphasis in the original).

> Compensatory damages must not be based on speculation or
> sympathy. They must be based on the evidence presented at trial,
> and only on that evidence. Plaintiff has the burden of proving
> compensatory damages by a preponderance of evidence.
>
> Mr. Jacobs claims the following items of damages:
> . . .
>
> Property – The reasonable value of property damaged or destroyed.

Trial Tr. 102-03, Nov. 18, 2008 (ECF No. 171).

Defendants argue that there is no support in the record for this award because plaintiff

failed to present any evidence or testimony about the value of his property which was apparently

destroyed. Defendants suggest that this is particularly true in light of the court's entry of

judgment in favor of all DOC defendants on plaintiff's access to the courts claim. Defendants

rely upon Virgin Island Maritime Service, Inc. v. Puerto Rico Maritime Shipping, 978 F. Supp.

637, 648 (D. V.I. 1997) ("The Court of Appeals [for the Third Circuit] has consistently

recognized that where there is no rational basis in the record for the jury's award, the trial court

may reduce or vacate the award as excessive."). Defendants acknowledge that plaintiff testified

at trial that certain defendants seized one hundred and fifty-one pages of his legal documents on

September 15, 2003, and that two pages of legal documents were taken from plaintiff on

September 16, 2003. Defendants note that plaintiff testified about the impact the loss of his legal

documents had on his legal cases and about the impact of defendants' actions on plaintiff.

In addition to plaintiff's general objections to defendants' arguments related to

compensatory damages, plaintiff asserts he suffered prejudice because he was unable to respond

with evidence, i.e., elaborate on the sentimental value of the property to a prisoner whose very

existence centers around gaining relief in his case. Plaintiff directs the court's attention to the

decision in Bell v. Johnson, 308 F.3d 594, 599 (6ᵗʰ Cir. 2002) (stating that the unwarranted

seizure of a prisoner's property, "whatever the monetary value of that property may be, is an ignoble and cowardly abuse of authority . . . and . . . particularly odious, to the point of shocking the conscience").  Plaintiff argues that it is reasonable to conclude that the jury believed that defendant's actions substantially caused plaintiff's injuries because the jury awarded punitive damages based upon a belief that defendants acted in a reckless and malicious manner.  In the alternative, plaintiff argues that he suffered mental anguish as a result of defendants' destruction of his legal property, with the actual injury being the destruction of the property itself and plaintiff's inability to respond to defendants' summary judgment motion in <u>Heck</u>,[14] which he notes was not mentioned in this court's Memorandum Opinion.

"'[C]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'"  <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 718 (3d Cir. 2010) (quoting <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003)).  "'A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award.'"  <u>Id.</u> (quoting <u>Thabault v. Chait</u>, 541 F.3d 512, 532 (3d Cir. 2008)).  The Court of Appeals for the Third Circuit will "'reverse a district court's decision on compensatory damages and grant a new trial only if the verdict is 'so grossly excessive as to shock the judicial conscience.'"  <u>Id.</u>  (quoting <u>Rivera v. V.I. Hous. Auth.</u>, 854 F.2d 24, 27 (3d Cir.1988)).

The court is mindful that the jury's award of compensatory damages cannot be based on sympathy or speculation, and – as noted above – so instructed the jury.  The court understands defendants' argument to mean that plaintiff should not recover because he did not adduce evidence of a fair market value for his property that was taken.  "[T]he basic purpose of § 1983 damages liability is 'to compensate persons for injuries caused by the deprivation of

---

[14] Jacobs referenced <u>Jacobs v. Heck</u>, Civ. A. No. 02-1703-JFC (W. D. Pa. 2002).

constitutional rights. . . ." SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, THE LAW OF SECTION 1983, § 4:3 at 4-8 (4th ed. 2010). In determining damages in a § 1983 context, state tort law has been relied upon by courts to assess the actual value of unique personal property. Id.; see Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000) ("It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory."). "When such items are destroyed, replacement with any reasonable substitute may be impossible, and if so, replacement costs cannot be used as a measure of damages." 1DAN B. DOBBS, DOBBS LAW OF REMEDIES, DAMAGES-EQUITY-RESTITUTION §5.13(1) at 838-39 (2d ed. 1994). In such instances, "courts are challenged to provide a damages award that respects the plaintiff's property rights without providing a windfall." Id. at 839. "As a result courts seem to have struggled to find some adjustment in the usual formula for damages to permit a something-more than market recovery." Id. §5.16(3) at 906.

For the purpose of determining damages, "value means exchange value or the value to the owner if this is greater than the exchange value." RESTATEMENT (SECOND) TORTS § 911(1) (2d ed. 2010). The exchange value of property is defined as:

> **the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted to by traders, or if no market exists, the amount that could be obtained in the usual course of finding a purchaser or hirer of similar property or services.**

Id. § 911(2). When factors exist apart from those entering into exchange value, the article may have a particular value to the owner which causes it to be more desirable to the owner than to others. Id. § 911 cmt. (e).[15] Comment (e) to section 911 provides:

---

[15] See Oliver-Smith v. City of Phila., 962 A.2d 728, 731 n.5, 732 (Pa. Commw. Ct. 2008) (noting RESTATEMENT (SECOND) TORTS § 911 cmt. (e), and citing Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co., 898 A.2d 590 (2006) (instructing the jury that "you may determine that it had a value to the plaintiff regardless of its market value").

Some things may have no exchange value but may be valuable to the owner; other things may have a comparatively small exchange value but have a special and greater value to the owner. The absence or inadequacy of the exchange value may result from the fact that others could not or would not use the thing for any purpose, or would employ it only in a less useful manner. Thus a personal record or manuscript, an artificial eye or a dog trained to obey only one master, will have substantially no value to others than the owner. The same is true of articles that give enjoyment to the user but have no substantial value to others, such as family portraits. Second-hand clothing and furniture have an exchange value, but frequently the value is far less than its use value to the owner. In these cases it would be unjust to limit the damages for destroying or harming the articles to the exchange value.

. . .

If the subject matter cannot be replaced, however, as in the case of a destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced by the original cost, and the quality and condition at the time of the loss. Likewise an author who with great labor has compiled a manuscript, useful to him but with no exchange value, is entitled, in case of its destruction, to the value of the time spent in producing it or necessary to spend to reproduce it. In these cases, however, damages cannot be based on sentimental value. Compensatory damages are not given for emotional distress caused merely by the loss of the things, except that in unusual circumstances damages may be awarded for humiliation caused by deprivation, as when one is deprived of essential articles of clothing. If the article was wantonly destroyed, punitive damages can be awarded.

Id. § 911 cmt. (e).

The law with respect to placing a value on unique personal property for purposes of compensatory damages is well-settled in Pennsylvania. As early as 1909, in Lloyd v. Haugh & Keenan Storage & Transfer Co., 72 A. 516 (Pa. 1909), the Supreme Court of Pennsylvania instructed:

[I]t is that other considerations than market value govern, with respect to those things which have peculiar value to the owner and little or none in a general market. Where this is the case the just rule of damages is the actual value of the thing destroyed to him who owns it, taking into account its cost, the practicability and

expense of replacing it, and such other considerations as in the particular case affect its value to the owner. Sedgwick on Damages, § 251.

. . .

   [I]t was for the jury to determine the compensation by the standard we have indicated. The instruction of the court on this point was as follows: 'The value of these goods that were lost in the custody of the defendant is what is called the market value; that is, as to a great portion of the goods. As for the goods of a personal nature, such as wearing apparel, and other goods and effects of a personal nature, and which have no market value, and there seems to have been a great many of that kind here, as to those that have no market value, the rule which you will follow is their value to the plaintiffs, not any fanciful or imaginary value they may have put on the articles as may be worth to them only, but what is the value of these articles in money to them-not any valuation outside of their money value.' This is a clear, concise, and correct statement of the true rule. . . .

Lloyd, 72 A. 518.

   In discussing this issue the state trial court in Gorham v. Springettsbury Township, 41 Pa.

D. & C.4th 50 (York Cnty Ct. Com. Pl. 1998), stated:

> In Pennsylvania, damages for the injury to or destruction of property by the tortious conduct of another are awarded to compensate the injured party for the actual loss suffered. *Daughen v. Fox*, 372 Pa. Super. 405, 418, 539 A.2d 858, 864 (1988) (citing *PennDOT v. Crea Estate*, 92 Pa. Commw. 242, 483 A.2d 996 (1977)).

> Additionally, the replacement cost as the measure of damages has been the long-established exception to the general rule of using the market value of property when determining the value of damaged property which is of a personal nature. *Lynch v. Bridges & Co. Inc.*, 451 Pa. Super. 92, 95, 678 A.2d 414, 415 (1996). In support of its contention the court found that:

> "Many of the goods for which compensation is here asked were of such a character that their market value could not compensate for their loss, as, for instance clothing and other personal belongings. It cannot be said that they had no value in the open market, since at public auction they would most likely have brought something, but manifestly the price they would have there commanded would not represent their value to the owner ... Where this is the case the just

> rule of damages is the actual value of the thing destroyed to him who owns it, taking into account its cost, the practicality and expense of replacing it, and such other consideration as in the particular case affect its value to the owner." *Id.* (citing *Lloyd v. Haugh & Kleenan Storage and Transfer Co.*, 223 Pa. 148, 156-57, 72 A 516, 518 (1909).

Gorham, 41 Pa. D. & C.4th at 53.

Similarly, the Pennsylvania Superior Court in Pikunse v. Kopchinski, 631 A.2d 1049 (Pa. Super. Ct. 1993), addressed the issue whether the plaintiff met her burden of proof at trial with respect to the value of her personal property which was converted by the defendants. Pikunse, 631 A.2d at 1049. On appeal, the defendants argued that the trial court's award of compensatory damages in the amount of $7,139 was improper. Defendants maintained that the plaintiff did not carry her burden of proving damages by a preponderance of the evidence at trial because she did not offer any expert testimony with respect to the fair market value of her household goods and personal effects in issue. In discussing the parties' dispute concerning the nature and value of the appellee's property, the superior court stated:

> While, ideally, the "measure of damages for conversion is the market value of the converted property at the time and place of conversion," *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 328, 524 A.2d 896, 899 (1987), *alloc. denied,* 516 Pa. 625, 532 A.2d 436 (1987), such a value is, in fact, often unascertainable. In *Landisburg,* the subject property, cattle, was sold at auction where the fair market value thereof could be ascertained merely by looking at the price for which the cattle were sold. In the instant case, however, appellee's household goods were thrown out by appellant tortfeasors, such that the fair market value of those goods could not be determined.
>
> It is well-settled that "mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the *certain result of the defendant's conduct.* [citation omitted]." *Pugh v. Holmes,* 486 Pa. 272, 297, 405 A.2d 897, 909-910 (1979) (emphasis added). In the instant case, it is obvious that appellee's damages were the "certain result" of appellants' conduct. Appellants irrevocably disposed of appellee's clothes, furniture,

> and appliances, as well as treasured photographs, books, and
> religious items. We will *not* preclude recovery merely because the
> damages awarded to appellee for her loss were *estimated* by the
> trial court. Indeed, it is the traditional function of the fact finder in
> conversion actions to estimate damages. *Penn Electric Supply Co.,*
> *Inc. v. Billows Electric Supply Co., Inc.,* 364 Pa.Super. 544, 550,
> 528 A.2d 643, 646 (1987).

Pikunse, 631 A.2d at 1051.

The circumstances in the instant case present a close call. Ostensibly, Jacobs' legal papers have little or no market value simply as pieces of paper. Plaintiff's papers were unique in that they were his legal papers and had a value to him in excess of the market value of the pieces of paper. The jury found that Jacobs should be awarded $5,000 for damage to his property with respect to his claim of retaliation against McConnell; $10,000 for damage to his property with respect to his claim of retaliation against Giddens; and $10,000 for damage to his property with respect to his claim of conspiracy against Giddens, for a $25,000 aggregate total award for property damage. The determination of the value of plaintiff's personal affects – his legal papers – is within the province of the jury. A jury's decision with respect to compensatory damages will be reversed and a new trial will be granted only if the verdict is "'so grossly excessive as to shock the judicial conscience.'" Cortez, 617 F.3d at 718 (quoting Rivera, 854 F.2d at 27) (internal quotation omitted). "'A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award.'" Id. (quoting Thabault, 541 F.3d at 532). A damage award must be rationally based. Id. (citing Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1038 (3d Cir.1987)). An appellate review of a district court's ruling with respect to damages, "must view the facts in the light most favorable to [the plaintiff]." Id. (citing Rivera, 854 F.2d at 25.)

Here, the court cannot find the jury's award of compensatory damages for the loss of plaintiff's property to be without a basis of evidence in the record. Plaintiff adduced evidence at trial that his legal property – his legal papers – was confiscated by defendants, including evidence of other cases, i.e., an appeal of the case in which he was originally imprisoned, documents related to filing a grievance against Giddens, and witness statements written by another inmate, Gary Banks. (See Trial Tr. 57-61, Nov. 5, 2008 (ECF No. 167)). The court cannot say that the value the jury placed on plaintiff's property as to his individual claims against McConnell and as to Giddens was excessive. Certainly the value of these legal documents exceeds the paper on which they were written. The jury's award for plaintiff's compensatory damages to his property does not shock the judicial conscience as to any individual award. Neither does the aggregate amount of $25,000 for the same property shock the judicial conscience. Ideally the jury in this case would have been instructed on a prohibition against double recovery for the same injury.[16] Defendants, however, did not raise the question of duplicative damages in their submissions for the proposed charge to the jury or in any objections to the court's instructions on the issue of damages[17] and did not object to the verdict slip which required the jury to contemplate individual liability against each defendant on each claim. Under all the circumstances, the court cannot justify upsetting the jury's awards related to the

---

[16] "The general bar against double recovery for the same injury is also applicable to § 1983 cases." SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, THE LAW OF SECTION 1983, § 4:15 at 4-68 (4th ed. 2010). "[C]ourts are concerned about potential double recovery for general damages." Id. "'A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award.'" Cortez v. Trans Union, LLC, 617 F.3d 688, 718 (3d Cir. 2010) (quoting Thabault v. Chait, 541 F.3d 512, 532 (3d Cir. 2008); see Gentile v. Cnty of Suffolk, 926 F.2d 142 (2d Cir. 1991) (finding that the defendants failed to demonstrate that the jury award of $150,000 for each plaintiff, $75,000 on state law cause of action for malicious prosecution and $75,000 on §1983 claim, was duplicative merely by noting that the jury allocated damages under two different causes of action; "[I]t is equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it.").

[17] The defendants did not request a charge like that described in Lloyd v. Haugh, 72 A. 516, 518 (Pa. 1909).

destruction of plaintiff's property. Defendants' request to strike the award for compensatory damages or remittitur with respect to the award for property damage will be denied.

ii.    Mental Harm – § 1983 Claims

Defendants argue that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997 et seq., bars recovery of compensatory damages in § 1983 claims brought by a prisoner where the prisoner suffered only mental or emotional injury absent a showing of some actual physical injury. Section 1997e(e) of the PLRA, entitled "Limitation on recovery," provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

 42 U.S.C. § 1997e(e).

In support, defendants cite Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir. 2000) (holding that a prisoner's § 1983 claim for compensatory damages that alleged infringement of his First Amendment right to free exercise of religion, but did not allege any physical injury was barred by the PLRA), Henderson v. Johnson, No. 04-CV-3037, 2007 WL 781767, at *6 (C.D. Ill. Mar. 12, 2007) (reducing $300 compensatory damages award to an award of $1 in nominal damages, in light of the PLRA's actual injury requirement and the evidence presented at trial; granting a new trial on damages if the plaintiff did not accept the remittitur),[18] and Taifa v. Bayh, No. 3:92-

---

[18] No new trial is granted if the court determines that damages are barred as a matter of law. In Cortez, 617 F.3d 688, the court of appeals instructed:

> [W]hen a trial court determines that the evidence does not support the jury's general damages award, it "has no authority ... to enter an absolute judgment for any other sum than that assessed by the jury.... without allowing petitioner the option of a new trial." Id. [Hetzel v. Prince William Cnty, Va., 523 U.S. 208, 211-12 (1998)] (quotation omitted). Thus, a court must afford a plaintiff the option of a new trial when it attempts to reduce a jury award because it believes the amount of the verdict is not supported by the evidence. These reductions are frequently referred to as conditional remittiturs. The same is not true when a court must reduce a damages award to avoid a denial of due process. In that case, the award is reduced as a matter of law and there is no interference with

CV-429, 1996 WL 441809 (N.D. Ill. June 6, 1996) (granting the defendants' Rule 50 motion after bench trial; determining *inter alia*, that the plaintiff was not entitled to compensatory damages on the basis of the evidence presented at trial which did not support a finding of physical injury).

Plaintiff notes that defendants raised twelve different affirmative defenses in their answer to his amended complaint – none of which mentioned the PLRA's bar on relief for mental or emotional injury, or de minimus harm to his reputation or property. Plaintiff argues that defendants were aware that his case did not involve a physical altercation since at least 2004 and failed to raise sufficiently any of these issues at any time: 1) during the years the litigation was pending, 2) at trial[19], 3) in any other Rule 50 motion, or 4) in an objection to the court's instructions to the jury. In support, plaintiff relies upon, among other decisions, <u>Robinson v. Johnson</u>, 313 F.3d 128, 137 (3d Cir. 2002) (stating that affirmative defenses must be raised as early as practicable to avoid prejudice), <u>Douglas v. Yates</u>, 535 F.3d 1316, 1320 (11th Cir. 2008) (concluding, by analogy to requirement of exhaustion of administrative remedies, that § 1997e(e) of the PLRA is an affirmative defense ) (citing <u>Jones v. Bock</u>, 549 U.S. 199 (2007)), and <u>Brown v. Ames</u>, 201 F.3d 654, 662 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 925 (2000) ("A party must object to a jury charge before the jury begins its deliberations in order to preserve its right to appeal that jury charge, . . . .").

---

the Seventh Amendment right to have a jury make findings of fact. [*BMW of N. Am., Inc. v.*] *Gore,* 517 U.S. [559] at 585-86, 116 S.Ct. 1589.

<u>Cortez</u>, 617 F.3d at 716.

[19] Plaintiff points to defendants' objection to a witness's testimony - a week or so before trial – as the only time defendants raised any issue related to a mental or emotional damage issue. Plaintiff avers that this objection was not related to an attack on his ability to secure damages for First Amendment violations, but an effort to prohibit Jacobs' grandmother from testifying about his background of mental and emotional issues.

The jury awarded plaintiff an aggregate amount of $30,000 for compensatory damages for mental harm with respect to his § 1983 claims. This amount included an award of $5,000 against McConnell, $5,000 against Scire, and $10,000 against Giddens with respect to the retaliation claim; and $10,000 against Giddens with respect to the conspiracy claim. Defendants argue that the court should reduce the award of compensatory damages for mental harm pursuant to the PLRA's limit on recovery set forth at 42 U.S.C. § 1997e(e) to an award of $1 for nominal damages.

As noted, plaintiff asserts defendants waived any indirect attack on the court's instructions to the jury because they never objected or made clear at any other time during the trial that the limit on compensatory damages for mental harm was in issue. Plaintiff points to the transcript - on a hearing on a motion in limine - as the only time defendants addressed the issue of damage for mental harm. In overruling defendants' objection to the testimony of Jacobs' grandmother about plaintiff's mental health background, plaintiff quotes the court's ruling on the issue:

> [O]ne of the proffered reasons for her testimony would be the impact on the mental health and that type of thing. And these kinds of damages are compensable under [a] Section 1983 claim for denial of access to the courts. Its [sic] not like a violation of the 8th Amendment, where you have to have some kind of physical injury, so, to the extent she has knowledge about that, the courts [sic] preliminary assessment is she would be able to testify to that.

(Pl.'s Br. in Opp. to Defs.' Mot. 8 (ECF No. 224)) (citing Trial Tr. 55, Nov. 4, 2008 (ECF No. 166)). Plaintiff avers that defendants' failure to raise the issue of a limit on damages related to mental harm unduly prejudices him at this time by preventing him from tailoring his trial strategy to include arguing to the jury in support of a higher punitive damages award.

Plaintiff also argues that the PLRA does not bar compensatory damages in absence of a

physical injury for First Amendment violations.  In support, plaintiff points to a number of

decisions holding that §1997e(e) is not applicable to First Amendment claims regardless of the

form of relief sought.  See Siggars-El v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2006); Rowe

v. Shake, 196 F.3d 778 (7th Cir. 1999); Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998);

McGrath v. Johnson, 67 F. Supp. 2d 499 (E.D. Pa. 1999).

 In Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003), the Court of Appeals for the Third

Circuit opined that §1997e(e) of the PLRA "predicates a prisoner's claim for mental or

emotional injury suffered while in custody on a showing of accompanying physical injury."

Mitchell, 318 F.3d at 533.  The pro se prisoner plaintiff in Mitchell filed a complaint against a

corrections officer and other prison officials, alleging, among other things, that the officer

planted contraband near his locker in retaliation for complaints the plaintiff filed against the

officer, in violation of his First, Eighth, and Fourteenth Amendment rights.  The plaintiff alleged

that he was deprived of food, drink and sleep for days, contending that this was sufficient

physical injury to support his claim because the statute does not require that the injury be more

than de minimus.  The district court dismissed the complaint *sua sponte* to the extent it sought

damages for emotional trauma, citing the limitation on compensatory damages set forth in the

PLRA.  Id.

 In discussing the scope of § 1997e(e), the court of appeals noted that the physical injury

requirement only applies to compensatory damages for mental or emotional harm – as opposed

to nominal and punitive damages.  Id. (citing Al-Hafeez, 226 F.3d at 252).  The court of appeals

commented that the issue involved a question of statutory interpretation and that other circuits

have interpreted differently the reliance on Eighth Amendment jurisprudence.  Id. at 535.   In

Mitchell, the court of appeals recognized that the plaintiff had not stated a claim for physical

injury.  The court of appeals, however, granted the plaintiff leave to amend his complaint in order to do so.  The court indicated that in order to escape the limit on compensatory damages set forth in section 1997e(e) of the PLRA, a prisoner must assert a physical injury that is more than de minimus, but less than significant.  Id. at 534-35; see Tate v. Dragovich, No. Civ. A. 96-4495, 2003 WL 21978141, at *9 (E.D. Pa. Aug. 14, 2003) (stating that the plaintiff was barred, under the PLRA requisite of a prior physical injury, from recovering compensatory damages for his alleged emotional injury).

In Al-Hafeez, the court of appeals held that "[n]either claims seeking nominal damages to vindicate constitutional rights nor claims seeking punitive damages to deter or punish egregious violations of constitutional rights are claims 'for mental or emotional injury'" within the meaning of § 1997e(e).  Al-Hafeez, 226 F.3d at 252 (quoting § 1997e(e)).  In Al-Hafeez, the plaintiff sought compensatory damages stemming solely from an alleged violation of his First Amendment right to free exercise of religion.  The defendants argued that the PLRA barred all damages by prisoners absent a physical injury.  The court of appeals held that the plaintiff's claims for compensatory damages for mental or emotional injury were properly dismissed because it was undisputed that the plaintiff did not allege a physical injury, and § 1997e(e) of the PLRA bars such compensatory damages absent a showing of a prior physical injury.  Id. at 250-51.  "The plain language of  § 1997e(e) makes no distinction between the various claims encompassed within the phrase 'federal civil action' to which the section  applies."  Id. at 250. With respect to nominal and punitive damages, however, the court held that a prior physical injury is not required under the PLRA for either nominal or punitive damages.  The court instructed that both nominal and punitive damages may be based solely on a constitutional violation.  Id. at 251.

The Court of Appeals for the Third Circuit has not ruled upon the narrow issue of whether an award of damages for mental harm – as opposed to whether a claim can be brought – is precluded absent a jury finding of physical injury.

> It is not entirely clear that Section 1997e(e) precludes an *award* of damages for emotional injury absent a *jury finding* of physical injury; rather, the statue focuses upon the pretrial stage, by precluding the prisoner from *bringing* an action seeking damages for emotional injury absent a *prior showing* of physical injury. A narrow reading of the statute's language arguably accords with the statutory purpose of decreasing the number of inmate suits and enabling the pretrial dismissal of such suits where only emotional injury is alleged: Under this view, if a plaintiff has survived summary judgment by pointing to evidence that would enable a reasonable jury to find physical injury, it would not offend the statute's purpose to permit the jury to award damages for emotional distress even if the jury did not find physical injury. However, because it is far from clear that this view will ultimately prevail, the safer course may be to incorporate the physical injury requirement into the jury instructions.

Model Civ. Jury Instr. § 4.8.1 cmt. n.115 (3d Cir. 2010).

Within the Third Circuit, it is clear that under the PLRA a prisoner must suffer a physical injury to <u>bring</u> a claim based solely upon mental or emotional injury. It is not clear, however, whether a bar on such compensatory damages under the PLRA would be considered an affirmative defense and subject to waiver if not timely raised. This question has not been before the Court of Appeals for the Third Circuit. It appears that the Court of Appeals for the Eleventh Circuit is the only court of appeals to consider this issue. The court need not resolve that issue here because defendants did not waive their right to assert the § 1997e(e) bar.

Plaintiff's argument that this is the first instance in which defendants addressed limitations contemplated by the PLRA is not accurate. A review of defendants' filings in the case shows that defendants' answer to the amended complaint included an affirmative defense that plaintiff failed to exhaust his administrative remedies as required by the PLRA. (See

Answer to Amended Complaint 10 (ECF No. 44)).  The issue of exhausting administrative remedies, however, is distinct from whether compensatory damages are available absent a physical injury.  Defendants specifically addressed the PLRA bar on compensatory damages absent a physical injury in their proposed jury instructions and in their proposed verdict slip.  (See Defs.' Proposed Jury Instructions 7-8 (ECF No. 104); Defs.' Proposed Verdict Slip 2-7 (ECF No. 105).  The court ruled at the charge conference that these instructions need not be included for two reasons: first, they were based upon defendants' instructions with respect to an Eighth Amendment claim - which did not proceed to trial; and second, the court found that plaintiff's First Amendment claim predicated on access to the courts did not prohibit compensatory damages.  (See Pretrial Tr. Oct. 23, 2004 (ECF No. 230)).  In their initial Rule 50(b) motion, defendants expressly reserved their right to file a postverdict motion pursuant to Rule 59 following the entry of the verdict with respect to, among other things, a motion to strike emotional damages based upon lack of actual physical injury.  (See Defs.' Mot. for Judgment pursuant to Fed. R. Civ. P 50 (ECF No. 136 at 2)).

Plaintiff conceded as much.  In plaintiff's offer of proof on witnesses and position on damages for his First Amendment claims, plaintiff stated:

> While plaintiff is not asking this court to declare §1997(e) unconstitutional, he is asking that he at least be permitted to put his evidence in on damages and allow the jury to consider the question of whether he is entitled to damages for the mental and emotional pain he's [sic] suffered.  As in Siggers-El, this court could permit the same and, in the unlikely scenario that the court of appeals disagrees, subtract the damages the jury awards in that regard.

Pl.'s Offer of Proof on Witnesses and Position on Damages for First Amend. Claims 2-3 (ECF No. 123).[20]  Because defendants timely raised this issue, the court will grant defendants' request

---

[20] The jury's award for mental harm related to plaintiff's First Amendment claim was stricken by this court in its Memorandum Opinion because there was not sufficient evidence of record to support plaintiff's § 1983 claims for

to strike the compensatory damages awarded by the jury for plaintiff's mental harm with respect to plaintiff's § 1983 retaliation and conspiracy claims. The court will award plaintiff nominal damages of $1 in each instance. Therefore, the aggregate amount of $30,000 for compensatory damages for mental harm will be stricken, which includes the award of $5,000 against McConnell, $5,000 against Scire, and $10,000 against Giddens with respect to the § 1983 retaliation claim; and the amount of $10,000 against Giddens with respect to the § 1983 conspiracy claim. The court will reduce those awards to $1 for nominal damages in each instance, for a total of $4.

> iii.    <u>Defamation Claim - Mental Anguish, Humiliation; Harm to Reputation</u>

With respect to plaintiff's state law defamation claim, the jury awarded plaintiff compensatory damages against Giddens in the amount of $10,000 for harm to plaintiff's reputation, along with $10,000 for plaintiff's mental anguish and humiliation resulting from the defamation. As an initial matter, defendants argue that the court should reduce the award of compensatory damages pursuant to the PLRA. Defendants argue that the PLRA bars recovery of compensatory damages for state as well as federal claims asserted by a prisoner where the prisoner does not make a showing of actual physical injury. Here, defendants rely upon <u>Al-Hafeez</u> and <u>Henderson</u>.

Defendants also request the court strike the jury's verdict on the basis that the record does not reflect any evidence with respect to plaintiff's reputation or the alleged harm he suffered as a result of Giddens' written response to plaintiff's grievance. Defendants concede that

---

violations of the First Amendment. Plaintiff acknowledges that his request for damages for mental harm did not involve physical injury. (See Pl.'s Br. in Opp. to Defs.' Mot. 4 (ECF No. 224) ("Defendant's [sic] knew what plaintiff's claims were since 2004, at least, they knew what his claimed injuries were and that his case did not involve a physical altercation.").

compensatory damages are recoverable under Pennsylvania law for injury to reputation and for emotional distress, but argue that such awards must be supported by competent evidence of an actual injury. For this proposition, defendants rely upon <u>Marcone v. Penthouse International, Ltd.</u>, 577 F. Supp. 318, 325 (E.D. Pa. 1983) (noting that with respect to a defamation claim, plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth are limited to compensation for actual injury) (<u>rev'd</u> on other grounds by <u>Marcone v. Penthouse Int'l, Magazine For Men</u>, 754 F.2d 1072 (3d Cir. 1985)).

In response, plaintiff argues[21] that the PLRA is not applicable to damages awarded on his defamation claim because it is a claim based upon state law for which the court exercised its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Plaintiff maintains that since the claim was pled, heard, and proven under state law, the court should not apply a federal statute to remit damages appropriately awarded under state law.

The fact that plaintiff's defamation claim is a state claim, however, does not dispose of defendants' argument that it is subject to the limit on damages absent a physical injury set forth

---

[21] Plaintiff also argued that defendants waived any claim that the PLRA bars the $10,000 claim for mental anguish and humiliation for failing to raise it as an affirmative defense and that raising the issue at this juncture constitutes an avoidance. Plaintiff relies upon <u>Douglas v. Yates</u>, 535 F.3d 1316 (11th Cir. 2008) (concluding that the PLRA limit on damages absent a physical injury is an affirmative defense similar to the requirement for exhaustion of administrative remedies, as opposed to a jurisdictional limit). This court was not able to locate any decision by the Court of Appeals for the Third Circuit addressing the issue whether the PLRA limit on damages absent a physical injury is an affirmative defense. The court of appeals has instructed, however, that the PLRA requirement of exhaustion of administrative remedies is an affirmative defense. <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003).

Similarly, plaintiff argued that defendants waived any indirect attack on the court's instructions to the jury because they did not object or make it clear at any other point in the litigation that the matter would be pursued. Defendants objected to any instruction of defamation of character in their proposed jury instructions on the basis that "no such cause of action is recognized under Section 1983 and, in any event, all Corrections Defendants would be entitled to sovereign immunity against such a claim under state law." (<u>See</u> Corrections Defendants' Proposed Jury Instructions 9 (ECF No. 104)).

For the reasons set forth above with respect to the waiver argument in the context of plaintiff's § 1983 claims, the court concludes no waiver of the § 1997e(e) argument occurred with respect to the state law defamation claim.

in the PRLA.  The plain language of the PLRA provides that the limitation on recovery is

applicable to all federal civil actions brought by a prisoner confined in a jail, prison or other

correctional facility.

> No Federal civil **action** may be brought by a prisoner confined in a
> jail, prison, or other correctional facility, for mental or emotional
> injury suffered while in custody without a prior showing of
> physical injury.

42 U.S.C. § 1997e(e) (emphasis added).  The court interprets the plain meaning of the term

"Federal civil action" to mean an action in which civil claims over which the federal court has

jurisdiction are brought, i.e., all claims over which the court has original jurisdiction under 28

U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.  The definition of the

word "action" is distinct from that of a "claim."  As defined in Black's Law Dictionary, an action

is defined as "[a] civil or criminal judicial proceeding. – Also termed *action at law*."  BLACK'S

LAW DICTIONARY 32 (9th ed. 2009).  In contrast, the definition for a claim is more narrow, i.e.,

"a demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a

complaint in a civil action specifying what relief the plaintiff asks for."  Id. at 282 (emphasis

added).  The court is persuaded by the rationale given by several courts, which held that pursuant

to the PLRA, a prisoner's damages for mental harm predicated upon state law claims are

precluded absent an actual physical injury.  See Schonarth v. Robinson, Civ. No. 06-cv-151,

2008 WL 510193, at *4 (D. N.H. Feb. 22, 2008) (finding that the PLRA bars recovery for mental

or emotional injury under a state law claim) (citing Searles v. Van Bebber, 251 F.3d 869, 876

(10th Cir. 2001) ("The statute limits the remedies available, regardless of the rights asserted, if

the only injuries are mental or emotional.")); see also Matelsky v. Gunn, 15 F. App'x 686, 689

(10th Cir. 2001) (finding pending state claim frivolous absent a physical injury); Hines v.

Oklahoma, No. CIV-07-197, 2007 WL 3046458, at *6 (W. D. Okla. Oct. 17, 2007) (finding that

state law claims for intentional infliction of emotional distress are barred by the PLRA absent physical injury); Hood v. Balido, No. 3:02-CV-0669, 2002 WL 1285200, at *3 (N.D. Tex. June 4, 2002) (finding that § 1997e(e)'s limitation with respect to physical injury applies to all "claims brought in federal court, not merely to claims founded on federal law. It may thus preclude pendent state claims for emotional damages."); Cannon v. Burkybile, No. 99 C 4623, 2000 WL 1409852, at *6 (N.D. Ill. Sept. 25, 2000) (dismissing state claims for negligence and intentional infliction of emotional distress on the basis the that the PLRA precludes recovery for custodial mental or emotional damages absent a showing of physical injury); Walker v. Akers, No. 98 C 3199, 1999 WL 787602, at * 6 (N.D. Ill. Sept. 24, 1999) ("The limitation of § 1997e(e) applies to claims brought in federal court, not merely to claims founded on federal law. Accordingly, since Walker has alleged no physical injury, he could not receive damages on a state-law claim . . .."); but see Albrecht v. Williams, Civ. A. No. 04-1895, 2009 WL 3296649, at *27 (D. N.J. Oct. 13, 2009) (doubting that § 1997e(e) applies to state law claims); Mercado v. McCarthy, Civ. A. No. 05-12124, 2009 WL 799465, at *2 (D. Mass. Mar. 25, 2009) (same); Bromell v. Idaho Dep't of Corrections, No. CIV-07-197, 2006 WL 3197157, at *5 (D. Idaho Oct. 31, 2006) (concluding § 1997e(e) does not bar a state-law claim for emotional injury). In Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002), the court of appeals held that the district court erred in applying § 1997e(e) to a case that was brought in state court, based solely on state law, and later removed to federal court. Mitchell is readily distinguishable from the instant matter. An incarcerated plaintiff is not precluded under federal law from filing a state civil action to assert state law claims - which is what the plaintiff in Mitchell did. Here Jacobs filed a federal civil action, including federal and state law claims in the action. He must abide by that choice, which under the PLRA precludes recovery for mental or emotional injury.

The statutory language of § 1997e(e), "federal civil action," is not ambiguous; it includes all claims in the action over which the federal court has jurisdiction. 42 U.S.C. § 1997e(e). The court finds that plaintiff's award for mental harm damages with respect to his state defamation claim is barred by § 1997e(e). Plaintiff's compensatory damages in the amount of $10,000 against Giddens awarded for plaintiff's mental anguish and humiliation resulting from his claim for defamation will be reduced to a nominal damage award of $1.

Distinct from plaintiff's award of compensatory damages for mental anguish and humiliation related to his defamation claim is his award for harm to his reputation. Defendants, however, also argue that the award for harm to reputation cannot be sustained because there is no evidence of record with respect to harm to Jacobs' reputation. Defendants did not point to any case law which would encompass harm to reputation within the plain language of the phrase "mental or emotional injury" contained in § 1997e(e). An award for harm to reputation is not specifically precluded under the PLRA. Here, plaintiff correctly points to the court's instruction to the jury that "'actual injury can include impairment to reputation in the community, personal humiliation, mental anguish and suffering,'" as proof of actual injury of damage to his reputation. (Pl.'s Br. in Opp. 22 (ECF No. 224)(citing Trial Tr. 100, Nov. 18, 2008 (ECF No. 171)); see also 2 Dan B. Dobbs, DOBBS LAW OF REMEDIES, DAMAGES-EQUITY-RESTITUTION § 7.2(3) at 268-69 (2d ed. 1994) ("Plaintiffs were allowed to recover large sums as 'general damages' without proof of either economic loss or any actual mental distress.. . . Under the presumed damages rule, the plaintiff would get to the jury even if the defendant proved there were no damages in fact, although the defendant's proof would be considered as bearing on the amount of damages") (citing Frisk v. News Co., 523 A.2d 347, 354 (Pa. Super Ct. 1986); First Nat. Bank of Forrest City v. N.R. McFall & Co., 222 S.W. 40 (1920)).

In instructing the jury on damages related to plaintiff's defamation claim, the court stated:

> THE COURT:    The plaintiff is entitled to be fairly and adequately compensated for all harm he suffered as a result of the false and defamatory communication published by the defendant.
>
> 1.   The injuries for which you may compensate the plaintiff by an award of damages against the defendant include:
>
> First:  The actual harm to the plaintiff's reputation that you find resulted from the defendant's conduct.
>
> Second:  The emotional distress, mental anguish and humiliation that you find the plaintiff suffered as a result of the defendant's conduct.
>
> Third: Any other special injuries that you find the plaintiff suffered as a result of the defendant's act.
>
> 2.  If you find that the defendant acted either **intentionally or recklessly** in publishing a false and defamatory communication, you may **presume** that the plaintiff suffered both injury to his reputation and the emotional distress, mental anguish and humiliation that would result from such a communication.  This means you need not have proof that the plaintiff suffered emotional distress, mental anguish and humiliation in order to award him damages for such harm, because such harm is presumed by the law when a defendant publishes a false and defamatory communication with the knowledge that it is false, or in reckless disregard of whether it is true or false.

(Trial Tr. 107-08, Nov. 18, 2004 (ECF No. 171) (relying upon PA. SUGG. STAND. JURY INSTR.

(CIV.) §13.16 (2008) (emphasis added)).  The subcommittee note to the defamation damages

section of the Pennsylvania Suggested Standard Civil Jury Instructions states in relevant part:

> The second part of the instruction, which is directed to the computation of presumed damages, is taken almost verbatim from

> Restatement of Torts § 621, comment c (1938), which was also
> cited and quoted with approval by the Pennsylvania Supreme
> Court in *Corabi v. Curtis Publishing Co.,* [273 A.2d 899, 919-20
> (Pa. 1971)] above.. . .

PA. SUGG. STAND. JURY INSTR. (CIV.) §13.16 subcom n. (2008).

There is sufficient evidence of record to support the conclusion that the jury could have

found that Giddens intentionally or recklessly defamed plaintiff.  Therefore, plaintiff did not

need to offer additional evidence that his reputation was damaged.  Evidence of such damages,

however, was presented.  McConnell, a security captain in charge of the correctional institution

where plaintiff was housed at the relevant time, testified that he received a note from plaintiff

concerning plaintiff's missing legal documents.  In response to plaintiff's request, McConnell

wrote:

> Mr. Jacobs, nobody, certainly not Lieutenant Giddens or myself, is
> trying to violate your rights to access to the Courts.  The fact is, an
> officer found some items belonging to someone other than Lyons
> in Lyons' cell, so they confiscated them.  I will review the matter
> with Lieutenant Giddens, and if appropriate, the items will be
> returned to you.  I don't -- I don't think I need to remind you that
> this does technically constitute loaning or borrowing property.

(Trial Tr. 148, Nov. 13, 2008 (ECF No. 169); Pl.'s Ex. No. 3, dated Sept. 17, 2003).

On cross-examination McConnell testified:

> JACOBS:  Referring to Plaintiff's Exhibit No. 3, upon
> you receiving that request, did you speak to
> anybody concerning the documents?
>
> MCCONNELL:  The only person I would have spoken to, in
> my recollection, would have been
> Lieutenant Giddens, and that would have
> been merely to ask what this was in
> reference to.
>
> JACOBS:  If I recall correctly, you stated that he may
> have said that there were misconducts
> pending regarding the matter?

| | |
|---|---|
| MCCONNELL: | I believe that's what I said. |
| JACOBS: | Meaning more than one misconduct? |
| MCCONNELL: | I believe that's what I said. |
| . . . | |
| JACOBS: | You reviewed the matter with Lieutenant Giddens? |
| MCCONNELL: | Yeah, I reviewed the matter with Lieutenant Giddens. |
| JACOBS: | And Lieutenant Giddens explained to you that I was trying to sue him. |
| MCCONNELL: | That's incorrect. |
| . . . | |
| JACOBS: | Had these documents been sent to you, you would have been responsible for maintaining the chain of custody of these documents? |
| MCCONNELL: | Yes. |
| JACOBS: | And those documents were sent to you? |
| MCCONNELL: | I don't know. |
| JACOBS: | You don't remember? |
| MCCONNELL: | I don't recall. |
| JACOBS: | Okay. In fact, the only reason you're saying that you don't remember is so that you can avoid responsibility for the destruction of my legal property? |
| MCCONNELL: | As I previously stated last time you asked me this, that's incorrect. |

(Trial Tr. 151-83, Nov. 13, 2008 (ECF No. 169)).

McConnell's response to plaintiff's letter is dated September 17, 2003. Plaintiff offered three additional exhibits as evidence relating to appeals of his grievances. On September 23, 2003, Stickman, the superintendent, wrote: "Lt. Giddens thoroughly investigated your alleged complaint and has found no veracity to your allegations." Pl.'s Ex. No. 43. On October 17, 2003, Stickman wrote:

> Your alleged complaint was thoroughly reviewed and investigated, and I have found no veracity to your allegations. Two (2) pages of written and/or typed material were confiscated from Eric Lyons on 8/14/03, not 151 pages, and Mr. Lyons was issued misconduct #50895.. . . Thus, I see no reason to change the initial response you received from the Grievance Officer and Coordinator.

Pl.'s Ex. No. 5.

On October 31, 2003, Stickman wrote:

> This correspondence is in regard to you appeal of grievance #64667. I've reviewed the response you have received from the Grievance Officer and Coordinator and concur with their response. ... This is a fabricated and frivolous grievance. Thus, I see no reason to change the initial response you received from the Grievance Officer and Coordinator.

(Pl.'s Ex. No. 44.)

The court does not pass judgment on the appropriateness of these responses; rather, the court finds there is sufficient evidence of record for the jury to believe that, after consulting with Giddens, McConnell did not believe plaintiff based upon the false statement Giddens made in his response to plaintiff's grievance. This testimony, along with future responses from Stickman with respect to plaintiff's subsequent requests, provides sufficient evidence upon which the jury could have rewarded plaintiff for damage to his reputation in the prison environment. Therefore, the court will deny defendants' request to amend the judgment with respect to plaintiff's award of compensatory damages in the amount of $10,000 against Giddens for harm to his reputation.

b.    Punitive Damages

Defendants argue that the jury's award of punitive damages is excessive under the circumstances.  The gravamen of defendants' argument is based upon an assumption that the court would grant their request to strike the compensatory damages pursuant to the PLRA.  In that scenario, defendants argue that the punitive damages are excessive when compared to any compensatory damages to which plaintiff would be entitled.   Defendants rely upon State Farm Mutual Automobile Insurance v. Campbell, 538 U.S. 408 (2003) (citing BMW of N. Am., Inc., v. Gore, 517 U.S. 559 (1996)).  Plaintiff disagrees.

Plaintiff argues that the punitive damage awards are supported by the evidence and are not excessive.  Plaintiff notes that defendants requested the court to instruct the jury to view each defendant individually when determining liability and damages.  Plaintiff argues that he should not be prejudiced because he proved multiple violations against multiple defendants.  Plaintiff maintains that a cursory look at the damages shows that the jury conscientiously considered the individual claims and accordingly awarded damages.  Plaintiff points to the jury's heavy award of damages against Giddens and evenhandedness with respect to the award of damages against Scire and McConnell, who played similar roles of facilitating Giddens' retaliation and conspiracy.

Plaintiff notes that the court instructed the jury that they could not award punitive damages unless it found that defendants acted in a reckless manner.  Plaintiff argues that to reduce the punitive damages award "'would discourage settlement in litigation because it would tell prison officials that they could violate prisoners' rights on the cheap.'" (Pl.'s Br. 26 (ECF No. 224) (quoting Siggars-El, 433 F. Supp. 2d at 811) (denying the defendant prison official's motion for a new trial or remittitur where jury awarded the plaintiff inmate $19,000 in

compensatory damages and $200,000 in punitive damages upon finding the defendant liable for retaliation of the plaintiff's exercise of his First Amendment rights)).

In Gore, the Supreme Court announced that a review of punitive damages awards requires the following three-part analysis:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Gore, 517 U.S. at 574-75.

In Campbell, investigators and witnesses concluded that Curtis Campbell caused an accident which killed one person and permanently disabled another. Campbell, 538 U.S. at 408. The automobile insurer contested liability - against the advice of its own investigator - and declined to settle the insureds' claims for the $50,000 policy limit, and assured the insureds that they did not need separate counsel because they were not exposed to liability. Id. The Utah trial jury returned a judgment over three times the policy limit. Id. The insureds brought an action against the insurer to recover for fraud, bad faith failure to settle within the policy limits, and intentional infliction of emotional distress. Id. The jury awarded the insureds $2,600,000 in compensatory damages and $145,000,000 in punitive damages. The trial court entered judgment on the jury verdict in favor of the insureds, but remitted the compensatory damages award to $1,000,000 and the punitive damages award to $25,000,000. On appeal, the Utah Supreme Court reinstated the jury's punitive damage award of $145,000,000. In reversing and remanding the case, the United States Supreme Court held that the punitive damage award of $145,000,000 on a $1,000,000 compensatory damage award is excessive and violated due process. The Court reasoned that the Utah Supreme Court awarded punitive damages to punish and deter the

perceived deficiencies of the insurer's operations nationwide, which did not bear on the individual insureds in that case.  Id. at 409-10.

With respect to the degree of reprehensibility, the Supreme Court instructed that this factor is "'the most important indicium of the reasonableness of a punitive damages award.'"  Campbell, 538 U.S. at 419 (quoting Gore, 517 U.S. at 575.)  In determining the reprehensibility of a defendant, the Supreme Court indicated in Campbell that courts should consider

> whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.  Id.[Gore], at 576-577.

Id.  Such analysis must be considered on a case-by-case basis.  "[T]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect."  Id.  "[P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."  Id.

In Cortez, the Court of Appeals for the Third Circuit, noted that the degree of reprehensibility of a defendant's conduct includes whether the conduct "'involves deliberate false statements rather than omissions.'"  Cortez, 617 F.3d at 723 (quoting Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc. 181 F.3d 446, 467 (3d Cir. 1999));  see Inter Med. Supplies, Ltd. , 181 F.3d at 470 (holding that the reduction of punitive damages award from $50,000,000 to $1,000,000 was warranted where former distributor of bone fixators was found liable under theories of breach of contract and tort because an award greater than $1,000,000 was not

reasonably necessary to punish and deter the former distributor's conduct); see also Chuy v.

Phila. Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (holding that punitive damages award

more than six times the amount of compensatory damages for intentional infliction of emotional

distress would not be reduced in view of the evidence concerning the employer's disdain for

employee's contractual claim and the president's remarks about an employee); CGB

Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F. 3d 184, 193 (3d Cir. 2007)

(holding that a ratio of punitive damages to compensatory damages of eighteen-to-one crossed

"the line into constitutional impropriety."); Tate, 2003 WL 21978141, at *7 (finding that plaintiff

prisoner's award of punitive damages of $10,000 in relation to nominal damages of $1 against

the correctional institution defendant was not larger than reasonably necessary to deter the

violations of the prisoner's First Amendment right of access to the courts).

Here, plaintiff presented sufficient evidence for the jury to believe that Giddens

deliberately fabricated false statements. (See Trial Tr. 45-48, Nov. 5, 2008 (ECF No. 167)).

Plaintiff's status as an *informa pauperis* pro se prisoner plaintiff also meets the financial

vulnerability factor. Such evidence survives scrutiny under the first guidepost because it is

reasonable to conclude that the jury found Giddens' purposeful behavior reprehensible. This is

particularly true given the jury's award of different compensatory damages among the

defendants and their award of twice the amount of damages against Giddens as against any other

individual defendant. Defendants concede that the jury concluded that the plaintiff's harm was

not the result of mere accident. (See Defs.' Br. 20 (ECF No. 197)).

With respect to the second factor, the original judgment entered reflected the award of

aggregate punitive damages in an amount which was one-half times the award of the aggregate

compensatory damages. Considering the court's ruling in this memorandum opinion with

respect to reducing the compensatory damages totaling $30,000 for mental harm awarded in plaintiff's § 1983 claims to a total nominal damages award of $4, in addition to the court's reduction of the compensatory damages of $10,000 for mental anguish and humiliation awarded in plaintiff's defamation claim to a nominal damage award of $1, the award of aggregate compensatory and nominal damages is now $35,0005 compared to the award of $40,000 in aggregate punitive damages. The ratio for the aggregate amounts of these awards is less than one-to-two and "falls well within the Supreme Court's standard for ordinary cases of a single-digit ratio." Cortez, 617 F.3d at 723-24 (quoting Campbell, 538 U.S. at 425)). Because nominal and punitive damages – even if considered separately by claim – are not prohibited by the PLRA, an individual punitive damages award of either $5,000 or $10,000 in contrast to a $1 nominal award on a single claim is not excessive. See Williams v. Kaufman Cnty., 352 F.3d 994, 1016 (5th Cir. 2003) (concluding that $15,000 in punitive damages per plaintiff on nominal damages of $1 per plaintiff was not unreasonable in light of the violations that took place; "any punitive damages-to- *compensatory* damages 'ratio analysis' cannot be applied effectively in cases where only *nominal* damages have been awarded") . The court of appeals in Williams, noted that "[b]ecause actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all." Id. (citing Provost v. City of Newburgh, 262 F.3d 146, 164 (2d Cir. 2001)) (concluding that $10,000 in punitive damages when only nominal damages were awarded "approaches the limits of what we would deem consistent with constitutional constraints."); McKinley v. Trattles, 732 F.2d 1320, 1327-28 (7th Cir.1984) (reducing a jury-decided punitive damages award of $15,000 to $6,000).

Although each party identified decisions to support examples with respect to the third guidepost, the court does not find that guidepost to be useful in this case; rather, the second factor provides the most guidance. The ratio between the awards for compensatory and nominal damages and the award for punitive damages, considered in the aggregate - $35,005 in compensatory and nominal damages versus $40,000 in punitive damages - is less than one-to-two and is not excessive. This ratio is clearly less than a double-digit ratio. The awards against the individual defendants – i.e., $5,000 in compensatory property damage and $1 nominal damage against McConnell versus $ 5,000 in punitive damages; $1 in nominal damages against Scire versus $5,000 in punitive damages; and $30,000 in compensatory property, retaliation, and conspiracy damages and $3 in nominal damages against Giddens versus $30,000 in punitive damages - are not excessive, particularly in this case, where Jacobs is precluded by law from recovering damages for mental or emotional harm due to his status as a prisoner. Therefore, the court will not strike or remit the awards for punitive damages. Defendants' request for remittitur of the punitive damages awarded to plaintiff will be denied.

### V.    <u>Conclusion</u>

With respect to defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or for a new trial and for remittitur pursuant to Federal Rule of Civil Procedure 59 (ECF No. 196), the court will grant the motion in part and deny it in part for the reasons set forth above.

# **ORDER**

Therefore, this 7th day of June, 2011, for the reasons set forth in the accompanying memorandum opinion, IT IS HEREBY ORDERED that defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or for a new trial and for remittitur pursuant to Federal Rule of Civil Procedure 59 (ECF No. 196), is **GRANTED in part and DENIED in part** as follows:

1) Rule 50 motion:

denied with respect to the motion for a judgment as a matter of law on the state law defamation claim and on the § 1983 conspiracy claim;

2) Rule 59(e) motion:

    a.   denied with respect to the awards of compensatory damages for plaintiff's property damage relating to Jacobs' § 1983 claims for: i) retaliation against McConnell ($5000) and Giddens ($10,000), and ii) conspiracy against Giddens ($10,000);

    b.   granted with respect to the awards of compensatory damages for mental harm relating to Jacobs' § 1983 claims for: i) retaliation against McConnell ($5,000), Scire ($5,000), and Giddens ($10,000), and ii) conspiracy against Giddens ($10,000) (each such award shall be reduced to a nominal damage of $1, for a total award of $4);

    c.   granted in part and denied in part with respect to the awards of compensatory damages relating to plaintiff's defamation claim: i) granted for mental anguish and humiliation against Giddens ($10,000) (this award for mental anguish and humiliation shall be reduced to a nominal damage award of $1), and ii) denied for harm to reputation against Giddens ($10,000); and

d.  denied with respect to the awards of punitive damages for: i) Jacobs' §1983 retaliation claims against McConnell ($5,000), Scire ($5,000), and Giddens ($10,000); ii) Jacobs' §1983 conspiracy claim against Giddens ($10,000); and iii) Jacobs' defamation claim against Giddens ($10,000).   An appropriate amended judgment will be entered.

BY THE COURT:


/s/ JOY FLOWERS CONTI
Joy Flowers Conti
 United States District Judge


cc:     Andre Jacobs
        #DQ 5437
        Box A
        Bellefonte, PA  16823

        Shannon Craven @ ca3.uscourts.gov