IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE JACOBS,                          )
                                       )
            Plaintiff,                 )
                                       )          Case No. 04-1366
      v.                               )
                                       )
PENNSYLVANIA DEPARTMENT OF             )
CORRECTONS, JEFFERY A. BEARD,          )
et al.,                                )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

I.    **Introduction**

      Plaintiff inmate Andre Jacobs ("Jacobs" or "plaintiff") brought this prisoner civil rights

action, pro se, pursuant to 42 U.S.C. § 1983 against the following defendants: Pennsylvania

Department of Corrections ("DOC"); the DOC secretary, Jeffery Beard ("Beard"); and DOC

officials and employees assigned to the State Correctional Institution at Pittsburgh ("SCI-

Pittsburgh"), including Thomas McConnell ("McConnell"), Carol Scire ("Scire"), Gregory

Giddens ("Giddens"), Allen Lynch ("Lynch"), Robert Bittner ("Bittner"), Captain J. Simpson

("Simpson"), Kristin P. Ressing ("Ressing"), Michael Ferson ("Ferson"), Shelly Mankey

("Mankey"), William Stickman ("Stickman"), Frank Cherico ("Cherico"), and David McCoy

("McCoy").  Jacobs asserted at trial: a) federal claims under § 1983 for violations of his

constitutional right to access to the courts and for retaliation and conspiracy, and b) a

Pennsylvania state claim of defamation.

Beginning on November 3, 2008, plaintiff's claims were tried before a jury. (See Trial Tr. 1, Nov. 3, 2008, ECF No. 165).) On November 21, 2008, the jury returned a verdict in favor of defendants Lynch, Bittner, Simpson, Ressing, Ferson, Mankey, Stickman, Cherico, McCoy and Beard on all claims. (See Verdict 2-5, Nov. 21, 2008, ECF No. 193.)) The jury found against defendants Giddens and McConnell on plaintiff's access to the courts claims (Id. at 1, 2); against defendants Giddens, Scire and McConnell on plaintiff's conspiracy claims (Id. at 3); against defendants Giddens, Scire and McConnell on plaintiff's retaliation claims (Id. at 4); and against defendant Giddens on plaintiff's defamation claim. (Id. at 5.) The jury awarded compensatory damages in the cumulative amount of $120,000[1] and punitive and/or special damages in the cumulative amount of $65,000,[2] for a total award of $185,000. (Id. at 6-8.)

Prior to and following the verdict, defendants moved under Federal Rule of Civil Procedure 50(a) and (b) for judgment as a matter of law on several of plaintiff's claims. (See (ECF No. 136); Trial Tr. 71-75, Nov. 6, 2008 (ECF No. 168)); Trial Tr. 168-69, Nov. 17, 2008 (ECF No. 170)); Trial Tr. 11-15, Nov. 24, 2008 (ECF No. 172)). On December 3, 2008, defendants filed a Rule 50 motion for judgment as a matter of law (ECF No. 136) and a brief in support (ECF No. 137). On July 31, 2009, defendants filed a supplemental brief in support of their Rule 50 motion (ECF No. 179). Plaintiff submitted written responses to defendants' Rule

---

[1] Compensatory damages were awarded in the amount of: a) $20,000 against Giddens and $10,000 against McConnell with respect to the access to the courts claims; b) $5,000 against Scire, $20,000 against Giddens and $10,000 against McConnell with respect to the retaliation claims; c) $5,000 against Scire, $20,000 against Giddens and $10,000 against McConnell with respect to the conspiracy claims; and d) $20,000 against Giddens with respect to the defamation claim.

[2] Punitive damages were awarded in the amount of: a) $10,000 against Giddens and $5,000 against McConnell with respect to access to the courts claims; b) $5,000 against Scire, $10,000 against Giddens and $5,000 against McConnell with respect to the retaliation claims; c) $5,000 against Scire, $10,000 against Giddens and $5,000 against McConnell with respect to the conspiracy claims; and d) $10,000 against Giddens with respect to the defamation claim.

50 motion (See ECF Nos. 144-45, 185). On September 11, 2009, the court held oral argument on the Rule 50 motion.

On September 21, 2009, the court issued a memorandum opinion granting defendants' motion with respect to the conspiracy claims against Scire and McConnell and the access to courts claims against Scire, McConnell and Giddens. See Jacobs v. Pa. Dept. of Corr., Civ. A. No. 04-1366, 2009 WL 3055324, at **22, 27-28 (W.D. Pa. Sept. 21, 2009). (ECF No. 189.) In all other aspects the Rule 50 motion was denied. By reason of that ruling, the cumulative amount of compensatory damages awarded was reduced to $ 75,000 and the cumulative amount of punitive or special damages awarded was reduced to $ 40,000.

On June 6, 2010, Jacobs filed three motions: (1) a motion for prejudgment and post-judgment costs pursuant to Federal Rule of Civil Procedure 54(d)(1) (the "Motion for Costs" (ECF No. 219)); (2) a motion to alter or amend judgment pursuant to Federal Rules of Civil Procedure 52 and 59 (the "Motion to Alter or Amend" (ECF No. 220)); and (3) a motion for a new trial on issues not presented to the jury pursuant to Federal Rules of Civil Procedure 59 and 60 (the "Motion for a New Trial" (ECF No. 221)). Each motion will be addressed.

## II.     Motion for Costs (ECF No. 219)

### A.     Standard of Review

Federal Rule of Civil Procedure 54(d)(1) provides, in relevant part:

**Rule 54. Judgment; Costs**

**. . .**

**(d) Costs; Attorney's Fees.**

> **(1)** *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party. But costs

against the United States, its officers, and its agencies may be
imposed only to the extent allowed by law. The clerk may tax costs
on 14 days' notice. On motion served within the next 7 days, the
court may review the clerk's action.

FED. R. CIV. P. 54 (d)(1).

A prevailing party in a federal civil action is entitled to costs, "as of course". In re Paoli
R.R. Yard PCB Litig., 221 F.3d 449, 462 (3d Cir. 2000) (quoting FED. R. CIV. P. 54(d)(1)).
"[A]s with attorney's fees, documentation of costs must be sufficiently specific to permit the
Court to determine whether the costs are reasonable." In re Unisys Corp. Retiree Med. Benefits
Erisa Litig., Civ. A. No. 03-3924, 2008 WL 2600364, at *14 (E.D. Pa. June 26, 2008) (citing
Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 181 (3d Cir. 2001)).

### B.    Discussion

In the Motion for Costs, plaintiff moves for prejudgment and postjudgment costs
pursuant to Federal Rule of Civil Procedure 54(d)(1).  Plaintiff argues that he is a prevailing
party because he prevailed on at least ten claims against three defendants.  As a prevailing party,
he argues that he should be allowed costs other than attorneys' fees.  (See Pl.'s Mot. for Costs 1.)

Plaintiff requests that the court award him costs in the amount of $1,670.00 based upon
his estimates of expenses in this litigation related to case materials, photocopies, locating
witnesses, hundreds of letters, library fees, stationery, mailings, photocopies and court costs
related to this case.  (Id. at ¶¶ 3-5.)

Defendants concede that a prevailing party is entitled to costs.  Defendants oppose
plaintiff's request, however, based upon a lack of specificity.  Defendants argue that plaintiff did
not provide any documentation in support of his request for costs that is sufficiently specific to
permit the court to determine whether the costs are reasonable.

The court agrees.  Plaintiff's estimates regarding the costs and expenses he incurred

during the course of this litigation are not sufficient for the court to determine whether those estimates are reasonable under the circumstances to support his request for costs pursuant to Federal Rule of Civil Procedure 54(d)(1).  See Loughner, 260 F.3d at 181 (vacating and remanding to district court award based upon one-page statement of costs containing dates and descriptions, but no supporting data explaining the relevant purpose of the expenditures).  Therefore, the court will deny plaintiff's Motion for Costs without prejudice to allow him to provide the court with sufficient documentation.

### III.    Motion to Alter or Amend Judgment  (ECF No. 220)

#### A.    Standard of Review

Federal Rule of Civil Procedure 59 provides, in relevant part:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

FED. R. CIV. P. 59(e).

Under Rule 59, a party may move to alter or amend a judgment "'to correct clear error [of law] or prevent manifest injustice.'"  Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 546 (3d Cir. 2010) (quoting North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).  A motion to alter or amend judgment is subject to the "sound discretion of the district court."  Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 272-73 (3d Cir. 2001).

#### B.    Discussion

Plaintiff filed the Motion to Alter or Amend with respect to this court's memorandum opinion, dated September 21, 2009, pursuant to Federal Rules of Civil Procedure 52 and 59.

Rule 52, however, is inapplicable because it only applies where the case was "tried on the facts without a jury or with an advisory jury . . .." FED. R. CIV. P. 52(a)(1). Therefore, the court will consider plaintiff's request to alter or amend the judgment under Rule 59. The memorandum opinion at issue considered defendants' Rule 50 motion for judgment as a matter of law.

In the September 21, 2009 memorandum opinion, the court determined that plaintiff failed to present sufficient evidence with respect to conspiracy claims against McConnell and Scire and with respect to his access to the courts claims against all defendants. In this motion plaintiff requests the court to alter or amend its opinion with respect to its rulings on the insufficiency of the evidence for: 1) a conspiracy claim against McConnell; 2) a conspiracy claim against Scire; and 3) access to the courts claims against all defendants. He also requests this court to reconsider its decision with respect to those claims not fully heard.

In response to plaintiff's Motion to Alter or Amend, defendants argue that plaintiff is essentially asking the court to reconsider the prior ruling on the defendants' Rule 50 motion to the extent it was granted. Defendants note that plaintiff submitted written responses to defendants' Rule 50 motion, and the court held oral argument on the motion. Defendants rely upon Iseley v. Beard, No. 02-CV-02006, 2007 WL 4322209, at *1 (M.D. Pa. Dec. 7, 2007) (noting that a successful motion to reconsider must establish "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."). Defendants argue that plaintiff did not demonstrate any grounds for the court to alter or amend its judgment.

1.    The Conspiracy Claim Against McConnell

Plaintiff argues that the court failed to acknowledge all the facts with respect to his claim of conspiracy against McConnell.  Plaintiff essentially reargues the same issues decided by the court in its memorandum opinion dated September 21, 2009 related to McConnell's alleged conspiracy with Giddens.  Plaintiff reiterates his claim that the court violated his Seventh Amendment rights by reexamining factual questions already decided by the jury with respect to whether McConnell committed conspiracy.  Jacobs argues the jury followed the court's instruction that proof of an agreement could be made by circumstantial evidence from which an agreement could be inferred.

Plaintiff argues that he proved the existence of a conspiracy between Giddens and McConnell by adducing evidence that McConnell committed an overt act when he met with Giddens to discuss plaintiff's legal papers and plaintiff never received his papers back.  Plaintiff claims that McConnell's failure to preserve the record with respect to the chain of custody of the legal papers in question rises to the level of an overt act proving that McConnell conspired with Giddens.  Plaintiff argues that the jury necessarily found that McConnell received plaintiff's legal papers, because that would be the only basis upon which the jury could have found that McConnell had prior knowledge of plaintiff's grievance in order to support the retaliation claim against McConnell.

Plaintiff argues that the court misinterpreted plaintiff's arguments with respect to the significance of Mr. Lyon's testimony about conversations Mr. Lyons had with Giddens concerning Giddens' intent to have plaintiff's legal papers destroyed.  Plaintiff argues that his point was not that it proved conspiracy, but that there was a meeting of the minds to not return plaintiff's legal property.

These arguments present the same issues decided by the court in the memorandum opinion dated September 21, 2009. The court concluded that plaintiff failed to present sufficient evidence as a matter of law with respect to his conspiracy claim against McConnell. The court can find no basis on which to reexamine that ruling.

2.     <u>The Conspiracy Claim Against Scire</u>

Plaintiff claims that the court's determination that Scire made no communication or agreement with another person is clearly erroneous because it is contradicted by his trial exhibits (numbers 1 and 2) and ignores basic principles of contract law – drawing an analogy between contract law and conspiracy.

Plaintiff claims that the court is required to accept the evidence of record showing that appointment of oneself to investigate oneself is against prison policy and is essentially proof of conspiracy. Plaintiff essentially reargues his underlying position that Scire's appointment of herself to investigate herself is proof of an overt act to conspire with Gidden.

The court adequately addressed plaintiff's arguments in the September 21, 2009 memorandum opinion and can find no basis on which to reconsider the ruling with respect to plaintiff's conspiracy claim against Scire.

3.     <u>Access to the Courts Claims Against Defendants</u>

Plaintiff claims that the court ignored the basis of his access to the courts claims that defendants' seizure and destruction of his legal property on September 15, 2003, obstructed him from presenting evidence in response to certain defendants' motion for summary judgment on the issue of exhaustion in his case, <u>Jacobs v. Heck</u>, Civ. A. No. 02-1703, filed in federal district court in the Western District of Pennsylvania. Plaintiff argues that he provided sufficient evidence of the underlying claim and the official acts that frustrated his litigation.

Plaintiff argues that the jury decided that defendants interfered with his right to access the courts and, as a result, that he necessarily suffered an actual injury. Plaintiff contends that defendants' exhibit P – related to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9545 – entered to address the time-bar jurisdictional issue, is not dispositive of the issue, because plaintiff argued that he qualified for one of the enumerated equitable tolling exceptions to the applicable statute of limitations. Plaintiff asserts that he was free to file a second PCRA petition if he discovered evidence to prove his claims of coerced plea, fraud of counsel and governmental obstruction.

In support, plaintiff relies upon Commonwealth v. Lark, 746 A.2d 585 (Pa. 2000). Lark does not support plaintiff's position, however, because the circumstances in that case are distinguishable from those in this case. The court in Lark considered the availability of filing subsequent PCRA petitions after the statute of limitations had passed when the facts upon which the petitioner's claims were based were not known to the petitioner and could not have been discovered by him during the time between the pending appeal of the first petition and the time the limitations period had passed for filing a second petition. Id. at 588. Plaintiff, however, did not allege that during the relevant limitations period he lacked knowledge about the underlying facts related to the alleged destruction of his legal materials.

Plaintiff argues that the court violated his Seventh Amendment rights by reviewing his claims de novo and by substituting the court's own judgment for that of the jury. Plaintiff fails to recognize, however, the distinction between how a court reviews a matter of law and a matter of fact in the context of a statute of limitations' time bar. Determining whether or not particular facts support a bar based upon the applicable statute of limitation is a matter of law. See Guenther v. Quartucci, Civ. A. No. 94-2966, 1996 WL 67616, at *3 (E.D. Pa. Feb. 12, 1996)

("'[I]f the facts of what occurred are not in dispute, the determination of whether the defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action is one of law for the court, not one of fact for the jury.'") (quoting Huber v. McElwee-Courbis Constr. Co., 392 F. Supp. 1379, 1385 (E.D. Pa. 1974)).

In the court's September 21, 2009 memorandum opinion, the court concluded that Jacobs failed to present sufficient evidence to show how the destruction of the documents prevented him from successfully presenting his claims. The court noted that Jacobs' PCRA petition was dismissed because he was already time barred from filing a PCRA petition at the time of the interference with his legal materials on September 15 and 16, 2003. The court found that Jacobs failed to present any evidence showing that destruction of his legal documents delayed his petition and caused him to miss the applicable filing period. Here, Jacobs essentially reiterates the same arguments he previously made. Because the court adequately reviewed the law with respect to the applicable statute of limitations in the memorandum opinion dated September 21, 2009, there is no basis to reconsider the ruling with respect to plaintiff's access to the court claims.

4.    Matters Not Fully Heard

As a final matter, plaintiff argues that he was prejudiced in presenting sufficient evidence in his case because defendants had total control over his person and property, including trial notes, law books, exhibits and related materials during the pendency of the trial. Plaintiff avers that the DOC explicitly told plaintiff that he would be transported back and forth from the courthouse and SCI-Fayette for the entire trial, citing the trial transcript of November 4, 2008. (Trial Tr. 112-13, Nov. 4, 2008 (ECF No. 166).) As a result, plaintiff did not travel with over seventeen boxes of legal matters. (Trial Tr. 199-200, Nov. 13, 2008 (ECF No. 169)). Instead,

plaintiff avers that he was taken to SCI-Pittsburgh and informed that he was not returning to SCI-Fayette.

Plaintiff argues that the week-long delay to retrieve his materials deprived him of a full and fair trial, because he was forced to give his opening statement without the benefit of access to his legal materials. In addition, plaintiff avers that all his witnesses were released from their subpoenas. Plaintiff argues that upon arrival of his materials, the two-hour opportunity to review over ten thousand documents while handcuffed, prevented him from being able to retrieve all the pertinent evidence supporting his claims.

Plaintiff argues that if he failed to submit sufficient evidence, it was not because such evidence did not exist, but because defendants purposefully prevented him from presenting sufficient evidence. Plaintiff argues that because he was prevented from being fully heard, the court lacked jurisdiction to grant relief under Rule 50. In the alternative, plaintiff argues that the court abused its discretion in ruling on defendant's Rule 50 motion, in the absence of plaintiff's opportunity to be fully heard on the matters.

Plaintiff arguments were set forth on the record. The court adequately addressed plaintiff's issues. With respect to gathering his legal materials, on November 4, 2008, the court and parties addressed those matters:

| | |
|---|---|
| JACOBS: | Concerning my case file for the '04. |
| THE COURT: | It's a question about whether you're going to be going back there or not. |
| COUNSEL FOR DEFENDANTS: | Your Honor, my understanding is he's going to remain at SCI Pittsburgh, and we're attempting to do that. |

| | |
|---|---|
| THE COURT: | How many materials do you have? |
| JACOBS: | A, a lot. I've been in this position before, where even when I was at ACJ, an Investigator Mark Codo (phonetic) was sent to SCI Fayette to separate my legal property and what documents we're [sic] trying to send there. |
| THE COURT: | We're not going to be in session here on Friday. Is there any way he can be transported back there to get his materials, and then, bring him back during the day on Friday, so he can make sure he has all his materials that he needs? |
| COUNSEL FOR DEFENDANTS: | We can ask the DOC if that can be done. |
| JACOBS: | I would prefer that. |
| THE COURT: | Then, that could be -- unfortunately, you would have to take him there and bring him back the same day. At least he would gather up everything he needed, and he should gather up, if he's going to stay there, make sure you have the materials you need for the third case as well. I know you have counsel on that, but you still may need your own materials for that; okay? And then, hopefully, he'll be there. If he's going to be at FCI Pittsburgh, then, you can have his meds and everything he has there. |
| COUNSEL FOR DEFENDANTS: | They are also looking into the medications issue. |
| THE COURT: | Okay. At least they should be able to call up the pharmacy. |
| COUNSEL FOR DEFENDANTS: | I believe that's what they were doing. |
| THE COURT: | Okay. So if you can make sure that happens, because I don't want Mr. Jacobs to be two |

|                            |                                                                 |
| -------------------------- | --------------------------------------------------------------- |
|                            | days without his medications. He should have it when he gets back. |
| COUNSEL FOR DEFENDANTS:    | Understood.                                                      |
| THE COURT:                 | Thank you. So, we'll be in recess. Is there anything else?       |
| JACOBS:                    | No, Your Honor.                                                 |
| THE COURT:                 | We'll be in recess until tomorrow.                              |
| JACOBS:                    | Okay.                                                          |

(Trial Tr. 112-14, Nov. 4, 2008 (ECF No. 166)).

On November 13, 2008, the following colloquy took place:

|                |                                                                                                                                                                                                                                                                                                                                                                                      |
| -------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------ |
| JACOBS:        | Well, due to the -- as I indicated in the motion, due to the late ruling on the issue of Mr. Brett Grote, I was under the impression that Mr. Grote's testimony would be allowed, and had that testimony been allowed, I would not have needed Mr. Bronson's testimony. And Mr. Bronson does have direct knowledge with respect to time frames and events which Mr. Grote did not have, and which I was under the impression Mr. Grote would be able to testify to having. |
| THE COURT:     | What you're saying is you really need to call him in your case in chief.                                                                                                                                                                                                                                                                                                              |
| JACOBS:        | Well, I was going to that was why I had listed him as an initial witness in the pretrial narrative statement. But then, I was placed under the impression that Mr. Grote had that same type of information and would be easily produced at the trial. Then it came that up Mr. Grote's testimony would not be permitted concerning the wide-spread practice within the LTSU at the relevant time frame of the claims within the case. |
| COUNSEL FOR    |                                                                                                                                                                                                                                                                                                                                                                                      |

| | |
|---|---|
| DEFENDANTS: | He could have brought that up at the time we were getting the witnesses together. I mean, and again, this is stuff in his case in chief. This is not rebuttal. |
| . . . | |
| THE COURT | So you know, I just was curious as to why you didn't bring this up when the Court said Mr. Grote would not be able to testify, when I made that ruling. |
| JACOBS: | Well, for one, I didn't have none of my files at that time. I only had limited files concerning this particular case. And as the testimony developed, and the defendants elicited testimony concerning particularly notice of the -- of claims and the documented instances of these, of seizure and destruction of property, it became apparent to me that that was going to weigh strongly on the issue of supervisory liability. And I do want to disprove the testimony of defendants in this case that there were not many instances of the seizure and destruction of property, and claims by LTSU prisoners at the relevant time frame. |
| THE COURT: | Okay. The Court does have some discretion here. I'll permit his testimony, but limited to his personal knowledge. He can't testify about what happened with other prisoners; only about his personal involvement, and the claims he's filed during the relevant time frame. It has to be fairly limited, because we're already way beyond the time frames here, and it has to be specifically directed to the particular defendants. And then, of course, the defendants will have an opportunity for surrebuttal. Okay. |
| JACOBS: | Okay. |

(Trial Tr. 198-200, Nov. 13, 2008 (ECF No. 169)).  Plaintiff called a number of witnesses and

prevailed on several claims.  (See direct examination of Michael Edwards, Trial Tr. 7-25, Nov. 6,

2008; Gary Banks, Trial Tr. 50-66, Nov. 6, 2008.)[3]  His claim of prejudice for lack of his legal materials is untenable.

IV.     **Motion for a New Trial** (ECF No. 221)

Plaintiff filed the Motion for a New Trial, pursuant to Federal Rules of Civil Procedure 59 and 60.  The motion is predicated upon issues not presented to the jury at trial.  In his motion plaintiff argues that a new trial is warranted based upon either an abuse of the court's discretion, or upon the court's mistakes with respect to the court's dismissal of at least three of plaintiff's claims related to: 1) the DOC's  alleged maintenance of a "code of silence" custom; 2) the denial of plaintiff's due process in disciplinary proceedings by Ferson, Mankey, McCoy, Simpson, Stickman, and Bittner; and 3) the DOC's maintenance of a system-wide practice of obstructing prisoners' rights to access the courts, which Beard either encouraged, condoned or to which he was deliberately indifferent.  (See Pl.'s Mot. for New Trial 2.)  In his brief in support of the motion, plaintiff sets forth four headings of claims upon which he argues the court's rulings were erroneous: 1) code of silence custom; 2) denial of due process - access; 3) denial of due process-disciplinary proceedings; and 4) Fourteenth Amendment deprivation of property.  (See Pl.'s Br. in Supp. Mot. for New Trial 4-7.)  Each argument will be addressed.

A.     **Standards of Review**

1.     <u>**Rule 59**</u>

Federal Rule of Civil Procedure 59 provides, in relevant part:

**(a) In General.**

---

[3] Jacobs also called witnesses that testified out of the presence of the jury, i.e., David Smith, Trial Tr. 29-36, Nov. 6, 2008; and Brett Grote, Trial Tr. 40-44, Nov. 4, 2008.

> **(1) Grounds for New Trial.** The court may, on motion, grant a
> new trial on all or some of the issues--and to any party--as
> follows:
>
> > **(A)** after a jury trial, for any reason for which a new trial
> > has heretofore been granted in an action at law in
> > federal court;
>
> . . .
>
> **(b) Time to File a Motion for a New Trial.** A motion for a new
> trial must be filed no later than 28 days after the entry of judgment.
> . . .

FED. R. CIV. P. 59(a), (b). Rule 59(a) does not set forth specific grounds on which a court may

grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the

discretion of the district court." <u>Blancha v. Raymark Indus.</u>, 972 F.2d 507, 512 (3d Cir. 1992)

(citing <u>Allied Chem. Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36 (1980)); <u>see</u> <u>Coney v. NPR, Inc.</u>, 312

F. App'x 469, 471 n.5 (3d Cir. 2009).

The scope of a district court's discretion in evaluating a motion for a new trial depends on

whether the motion is based upon a prejudicial error of law or a verdict alleged to be against the

weight of the evidence. <u>See</u> <u>Foster v. National Fuel Gas Co.</u>, 316 F.3d 424, 429-30 (3d Cir.

2003) (citing <u>Klein v. Hollings</u>, 992 F.2d 1285, 1290 (3d Cir. 1993)). When the motion involves

a matter within the sound discretion of the trial court – such as the court's evidentiary rulings,

points of charge to the jury, or a prejudicial statement made by counsel – the district court has

wide latitude in ruling on the motion. <u>Klein</u>, 992 F.2d at 1289-90.

### 2.  Rule 60

Federal Rule of Civil Procedure 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

FED. R. CIV. P. 60.

"Rule 60 is the vehicle by which relief from a judgment can be obtained in district court." Lindy Invs. III v. Shakertown 1992 Inc., 360 F. App'x 510, 512 (5th Cir. 2010). "The remedy provided by Rule 60(b) is 'extraordinary, and special circumstances must justify granting relief under it.'" Moolenaar v. Gov't of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir. 1987) (quoting Page v. Schweiker, 786 F.2d 150, 158 (3d Cir. 1986)). Subsection (b)(1) of Rule 60 allows a party to ask the court for relief from a final judgment based upon mistake or surprise. FED. R. CIV. P. 60(b). Rule 60(b)(1) relief has been applied liberally to a variety of situations. 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2858 (2d ed. 1995).

**B.** **Discussion**

Plaintiff asserts that he was not permitted to proceed to trial on the claims identified above. (See Pl.'s Mot. for a New Trial ¶ 3.) Plaintiff avers that he previously raised the argument that defendants' motions to dismiss his claims were waived on the basis that they were not timely filed. (See Pl.'s Br. in Supp. of Mot. for New Trial 2-3.) Plaintiff states that the court

continued to entertain defendants' challenges and dismissed a number of his claims on the allegedly false basis that the claims "were not issues in this case."  (Id. at 3.)  Plaintiff contends that because the court sustained all defendants' objections with respect to the dismissed claims, the jury did not hear any evidence related to the dismissed claims which resulted in ten of the DOC employees being found not liable.  (Id.)  The issues underlying defendant's objections to admission into evidence on the basis of relevance form the basis of plaintiff's Motion for a New Trial.

Defendants argue that the court permitted plaintiff to present all the claims reasonably deduced from his amended complaint, as well as the evidence referenced in the present motion. Defendants contend that the record supports the court's rulings with respect to the issues raised in plaintiff's instant motion.  (See Defs.' Resp. to Pl.'s Mot. for New Trial ¶ 10.)  In support, defendants point to the parties' pretrial narratives (see ECF Nos. 71, 73, 97, 99), motions in limine (ECF Nos. 101-02, 106-07, 115, 18 [sic] [118], 124, 126), discussions the court had with the parties about these issues with respect to the court's charge to the jury and the verdict slip, and rulings the court made during the trial.  Defendants note that plaintiff submitted written responses to defendants' Rule 50 motion (see ECF Nos. 144-45, 185), and that the court held oral argument on the Rule 50 motion.  Defendants argue that plaintiff was able to offer evidence on these issues in support of his identified claims of retaliation, access to the courts, and defamation.

1.    Code of Silence Custom

Plaintiff argues that the court's ruling that a code of silence custom was not an issue in this case prevented him from introducing evidence at trial necessary to prove multiple claims against ten defendants whom the jury found not liable.  Plaintiff avers that his evidence on this

point consisted of admissions by current and former DOC employees who would have testified that it is a DOC policy or custom to retaliate against prisoners who file lawsuits against DOC staff.

At trial the court sustained defendants' relevancy objection to the extent the line of questioning went beyond the scope of plaintiff's claims. The court and parties addressed the matter. On redirect, counsel for Mankey asked:

> COUNSEL FOR
> DEFENDANTS: Miss Mankey, when Mr. Jacobs was cross examining you, he had asked you about when you were handling his misconduct appeal on the PRC back in, I believe it was 2003, whether you were affected by any outside influence. I would like to ask you again, when you wrote the grievance, or the misconduct response to Mr. Jacobs' appeal, were you affected by any outside influence?
>
> MANKEY: No, I was not.

. . .

On recross examination the following colloquy occurred between Jacobs and Mankey:

> JACOBS: Are you familiar with the Department of Corrections Code of Ethics?
>
> MANKEY: Yes, I am.
>
> JACOBS: Are you aware of a provision within the Code of Ethics which states that any decision by a superior officer, anyone under that superior, must defer to their judgment, even if they disagree with it?
>
> MANKEY: I couldn't testify to that, what it states completely.
> . . .

| | |
|---|---|
| JACOBS: | Would you have been aware of the provisions within the Code of Ethics at the time in question? |
| MANKEY: | When we were doing the PRC appeals? Yes. . . . |
| JACOBS: | Do you agree with me that the Code of Ethics deals with how you were to conduct yourself during the entirety of your employment with the Department of Corrections? |
| MANKEY: | Yes. . . . |
| JACOBS: | Do you generally defer to your superiors? |
| MANKEY: | Yes, when they give me an order. |
| JACOBS: | Officer superior says to you not to do something, you would not do it, or you would do it? |
| MANKEY: | If it was unethical, I would not do it. |
| JACOBS:. | Okay. In your experience, have you ever witnessed anything unethical by another DOC employee? |
| MANKEY: | No. . . . |

Defense counsel raised an objection to Jacobs' questioning and the following colloquy

took place:

| | |
|---|---|
| COUNSEL FOR DEFENDANTS: | Excuse me. Excuse me, Your Honor. |
| THE COURT: | Yes. |
| COUNSEL FOR DEFENDANTS: | I don't think this is appropriate cross examination. |

| | |
|---|---|
| THE COURT: | I'll see you -- we'll excuse the jury. Please rise for the jury. (Whereupon, jury retires.) |
| THE COURT: | Please be seated.  Could you state your reasons, [Counsel for Defendants]. |
| COUNSEL FOR DEFENDANTS: | Initially, it's beyond the scope of my redirect. But beyond that, the claim against Miss Mankey is that she, in the process of sustaining the hearing examiner's findings, violated his rights. |
| | The fact that she did or didn't see other ethical or unethical behavior, didn't report it or did report it, or never saw any unethical behavior in the part of the prison she worked is just not relevant to what's going on here. |
| JACOBS: | First of all, Your Honor, within the complaint, I alleged not just – |
| THE COURT: | Let's focus on, first of all, it does appear to the Court this line of questioning is beyond the nature and kind of questions that were asked in the redirect. |
| JACOBS: | He questioned outside influence. I'm centering in on outside influence, and it's the policy, and it is within the complaint. It is a policy of DOC employees to act in collusion with other DOC employees, to sabotage grievances, sabotage appeals, so forth and so on. |
| | He brought the issue up, "outside influence". I'm addressing the issue, outside influence. |
| COUNSEL FOR DEFENDANTS: | If he wants to ask that question, he can ask that question, if he's asking about whether she's witnessed ethical, or whether she has ever witnessed unethical behavior in her 11 years in the DOC. |

THE COURT:         That's –

JACOBS:            That goes to her credibility, Your Honor. If
                   she is saying that -- she just testified that if
                   she did, if she did receive an order from a
                   superior, that she -- that was lawful, but if it
                   wasn't unethical, then, she, she would, if it
                   wasn't ethical, she would report it.

                   I'm testing her credibility. And this goes to
                   conspiracy. This goes to drawing the link.
                   This goes to the fact that when other
                   defendants testify that they did talk to other
                   people. And you -- this is an issue of
                   conspiracy, You Honor.

THE COURT:         Well, the conspiracy has to do with whether
                   or not there was a conspiracy with respect to
                   you and the taking of your legal property.
                   That's what the conspiracy goes to.

JACOBS:            Okay.

THE COURT:         So, you know, I don't see the link between
                   what areas you're trying to get into to your
                   case.

JACOBS:            I'm going to the issue of outside influence.

THE COURT:         You need to direct the outside influence to
                   her.

JACOBS:            Well, this is direct to her. If -- Your   Honor,
                   if the DOC has a policy of, unwritten policy
                   of supporting misconduct of other DOC
                   officials, that is influence. That is influence.
                   That is something that will weigh on her
                   ability to make an impartial decision with
                   respect to me.

THE COURT:         Well, you have to link it to her, her role at
                   the PRC.

                   If she saw misconducts that were improper
                   and she didn't do anything about them, and

                              22

just, you know, rubber-stamped them, then, you can probe into that.  But I don't know what your [sic] asking her here that's related to that. You have to keep it related to your case.

JACOBS:    I believe her credibility is related, you know you know, the issue of her credibility here, saying, if she did witness something unethical that she will report it.

And I'm saying that something unethical was going on, and that something unethical did take place  in my case in regards to this appeal, and that she would not report it, and that she did not report it. And the fact that she never reports anything in regards to what a DOC official does, does add weight to my suggestion that even if something unethical did take place, she would    not testify to that.

THE COURT:    I think you need to ask if she has seen things that were unethical in  this conduct process and the appeals that she was reviewing.

JACOBS:    I think that is also relevant to her, this exhibit, as the DOC official and the Code of Ethics. If she witnessed unethical -- I mean, why would she report it in my case if she never reported it before?

THE COURT:    Well, you can ask her that.

JACOBS:    That's what I mean.

THE COURT:    In the misconducts. I mean, I have no idea what the scope is of what you're asking, quite frankly.

JACOBS:    Your Honor –

THE COURT:    I'm trying to give you a fair opportunity to [ask] questions, but you have to keep your questions related to this case, and the time frame.

JACOBS:            It is related.

THE COURT:         And you are suggesting here, with respect to her role as a reviewer, as someone that was in the review process. So, if she's seen misconducts that in her review process she turned a blind eye to, you can ask her that. I mean, I don't know about what other kinds of unethical conduct might be going on, you know, out in a yard or somewhere else that may or may not have gotten reported, and how serious those would be.

                   So I mean, we're going to be in a whole side collateral issue here, and that's confusing. And so, you need to keep it with respect to your claims.

JACOBS:            Okay. Let me ask you this, Your Honor. Is it okay for me to ask her on her own observation, in her own experiences, in her own interactions with guards, in her time as Department of Corrections staff, has she ever witnessed or reported unethical behavior. That, I mean, that goes to her credibility.

COUNSEL FOR
DEFENDANTS:        That has nothing to do with this case.

JACOBS:            It has to do with her credibility. It has to do with whether or not she's truthful, and if she would report this in my case. It's relevant.

THE COURT:         How does it go to truthfulness?

JACOBS:            It contradicts what she just said; if she did witness unethical behavior, that she would report it.

                   My allegation against her is that there was unethical behavior in my case that she did take part in, and that's not reporting it, and that she's hiding it right now.

| | |
|---|---|
| THE COURT: | I'm not going to have this case go into becoming what other kind of ethical behavior is going on over three years or four years in the prison system. We need to focus on your claims. |
| | . . . |
| COUNSEL FOR DEFENDANTS: | If he wants to ask about outside influence, he needs to ask her, were you influenced by any outside factors. |
| | . . . |
| THE COURT: | How does this go to outside influence? |
| JACOBS: | The policy, the policy of supporting - the policy of supporting DOC staff when they commit a violation against a prisoner is the influence. That is the influence. That is the motivation for her to rubber stamp my appeal, and then, go along with the guards. That is the influence. |
| COUNSEL FOR DEFENDANTS: | He needs to ask her if she's aware of that policy, if it exists, if that's where he's headed with this. |
| THE COURT: | You can ask her if there's a policy along those lines, and that if there is, what's the effect [sic] to her decision here. |
| JACOBS: | Okay. |
| THE COURT: | Okay? |
| JACOBS: | Okay. |
| THE COURT: | Please rise for the jury. (Whereupon, jury is seated.) |

THE RECROSS EXAMINATION CONTINUED BY JACOBS AS FOLLOWS:

| | |
|---|---|
| JACOBS: | You basically rubber stamp any, any adverse action taken against a prisoner; correct? |

MANKEY: No.

JACOBS: Anything, anything a guard said that a prisoner did, you would agree with whatever the guard said?

MANKEY: No.

JACOBS: Were you also aware of a policy at the time in question of prison staff, DOC staff supporting any allegations by a guard against a prisoner?

MANKEY: I am aware of no such policy.

JACOBS: And at the time you rendered your decision on my appeal, you were acting pursuant to that policy; weren't you?

MANKEY: I'm aware of no such policy.

JACOBS: No further questions, Your Honor.

COUNSEL FOR DEFENDANTS: Nothing further, Your Honor.

THE COURT: I'm just going to excuse the jury for a moment.

(Whereupon, jury retires.)

THE COURT: Please be seated.

I just want to put on the record that I believe the last objection was based on Rule 608 of the Federal Rules of Evidence, evidence of character and conduct of witnesses.

And that will be 608(b): Specific instances of the conduct of a witness for the purpose of attacking or supporting a witness' character for truthfulness, other than conviction of crime, as provided in Rule 609, may not be proved by extrinsic evidence.

They may, however, in the discretion of the Court, if probative of truthfulness or untruthfulness being inquired into on cross examination of the witness, one, concern the witness' character for truthfulness or untruthfulness, or two, concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross examined has testified.

So, that's really -- and we're directed here as well by Rule 404(b) with respect to the, with respect to this, with respect to this issue.

And so, the Court was looking at this as to whether it proves truthfulness or untruthfulness, and the broad and breadth of the question relating to.

Whatever kind of ethical or unethical kind of conduct may or may not have been observed was not specific enough, and it would have created potential confusion and collateral matters that would unduly delay the trial, and it was not sufficiently related to truthfulness or untruthfulness in this context.

(Trial Tr. 75-85, Nov. 6, 2008 (ECF No. 168.))

Relevant evidence is defined by Federal Rule of Evidence 401. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. All relevant evidence will be admissible unless it is excluded by another rule of evidence. United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir. 1996). Under Federal Rule of Evidence 403, relevant evidence will be excluded if the court determines that the risk of unfair prejudice to a party substantially outweighs the probative value of the evidence. FED. R. EVID. 403. The court concluded that the probative value of admitting plaintiff's proposed

"code of silence" custom was outweighed by the risk of prejudice. (Trial Tr. 75-85, Nov. 6, 2008.)

Plaintiff points to <u>Baron v. Hickey</u>, 292 F. Supp. 2d 248 (2003), for the proposition that a "code of silence" is a custom. Plaintiff's reliance on <u>Baron</u>, however, is misplaced. In <u>Baron</u> the plaintiff corrections officer claimed he was forced to resign due to co-worker harassment in retaliation for reporting a fellow officer's misconduct in violation of the institution's "code of silence." <u>Id.</u> at 249. The jury found for the plaintiff, awarding him $500,000 in damages against the defendants for violations of his civil rights by their custom and policy of failing to investigate and discipline employees who enforced the "code of silence." <u>Id.</u> The defendants moved for judgment as a matter of law and alternatively for a new trial. <u>Id.</u> at 250. The court found that the jury could have reasonably inferred that the plaintiff's constructive discharge was caused by the unofficial custom of deliberate indifference to retaliatory harassment against officers in the plaintiff's department who breached the code. <u>Id.</u> at 257. The court based its decision, in part, on the testimony of the plaintiff's superintendent at the time. The superintendent confirmed that a "code of silence" among the officers at the jail existed which resulted in a protective lack of reporting by the officers. The plaintiff broke the code when he complained to his supervisor.

Here, plaintiff sought to introduce testimony from witnesses about alleged codes of silence at institutions other that the one at which plaintiff was housed. Plaintiff conflates the distinction between a claim or cause of action and relevant evidence to support a claim or cause of action. The court's finding in <u>Baron</u> is not applicable to the issue that was before this court - whether or not a custom of a code of silence that existed at a facility other than the one at which plaintiff's alleged violations took place is relevant evidence in plaintiff's instant case. (<u>See</u> Trial

Tr. 29-36, 40-44, Nov. 6, 2008) (testimonies out of the presence of jury of David Smith and Brett Grote).

This issue was raised and resolved by the court during the trial, and the court is not inclined to reconsider its ruling under the circumstances.[4] The court is not aware of any law or argument not already considered during the trial. For the reasons set forth above and on the record at trial, the court acted within its discretion in precluding the introduction of this evidence.

### 2. Denial of Due Process: Access and Disciplinary Proceedings

#### a. Access

Plaintiff argues that he is entitled to a trial on his claim that the DOC denied him due process related to access by challenging the DOC's policy of prohibiting legally educated prisoners from assisting legally uneducated prisoners in the preparation and filing of legal papers. Plaintiff maintains that this claim was properly pled, charging that this was a "policy" and an "exaggerated response to any perceived security risk" acknowledged by defendants and not dismissed. (Pl.'s Br. in Supp. Mot. For New Tr. 5.) Plaintiff contends that his pretrial narrative statement made clear that he had not abandoned this claim and set forth the evidence he intended to produce at trial to support it, i.e., DOC policies related to this issue.

---

[4] Plaintiff did not file a motion for reconsideration, but rather filed a motion for a new trial. Plaintiff, however, is in essence requesting that the court reconsider its ruling that precluded plaintiff from introducing evidence with respect to DOC code of silence customs. A motion for reconsideration is granted only if one of three situations is shown: "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993).

> Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. . . . Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly. . . .

Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (internal citations omitted). Plaintiff does not argue that new evidence is available or that there is a change in the controlling law.

Plaintiff relies on Johnson v. Avery, 393 U.S. 483 (1969), for the proposition that interference with mutual legal assistance among prisoners is a viable claim. In Johnson, a state prisoner serving a life sentence was transferred to the maximum security building in the prison for violation of a prison regulation prohibiting an inmate from assisting another inmate with respect to legal matters. The district court held that the regulation was void because, absent any viable alternatives, it had the effect of barring illiterate inmates from access to federal habeas corpus. Id. at 483. The state appealed the district court decision. The Court of Appeals for the Sixth Circuit reversed, concluding that the regulation did not unlawfully conflict with the federal right of habeas corpus and was justified by the "interest of the State in preserving prison discipline and in limiting the practice of law to licensed attorneys." Id. at 485. The United States Supreme Court reversed and remanded holding that

> unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation . . . barring inmates from furnishing such assistance to other prisoners.

Id. at 490. In considering the circumstances in the Johnson decision, the Court noted that

> [e]ven in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities. . . .

Id.

Plaintiff's reliance on Johnson is misplaced because the issue before the court in Johnson was whether a policy prohibiting inmates from assisting each other with legal matters was constitutional in the absence of any alternative assistance provided by the state to assist inmates in the filing of habeas corpus matters. In this case, however, the issue before the court is the

propriety of the court's ruling with respect to the relevance of particular evidence related to whether or not the prison at which plaintiff was housed provided legal assistance to prisoners who were confined in the long term segregation unit.[5]  Although the court sustained defendants' objection to the admission of this evidence, the court's ruling did not prohibit plaintiff from filing a separate access to the courts claim on those facts.  Plaintiff concedes that trial testimony by both sides demonstrated that the prison did not offer legal assistance to prisoners who were confined in the long term segregation unit where plaintiff was housed.[6]  Under these circumstances, the court's denial of the admissibility of further evidence on this matter does not sustain a motion for a new trial.

b.    Disciplinary Procedures

Next, plaintiff argues that he made several claims concerning defendants' policy of using kangaroo disciplinary courts to sentence prisoners to solitary confinement conditions without due process and supervisory defendants' condonement of such perfunctory proceedings.  Plaintiff argues that denial of due process in disciplinary proceedings is a cognizable claim where the conditions subject the prisoner to atypical and significant hardships.  In support, plaintiff relies upon Sandin v. Conner, 515 U.S. 472 (1995).

At issue in Sandin was whether refusal to allow a prisoner to present witnesses during a disciplinary hearing followed by an imposition of segregation for misconduct deprived the prisoner of procedural due process.  Id. at 475.  A district court granted summary judgment for

---

[5] Specifically, plaintiff argues that his legal papers were taken.

[6] In plaintiff's motion for a new trial, he requests that the court reconsider its evidentiary ruling with respect to the admission of evidence of the alleged policy of prohibiting legally educated prisoners from assisting legally uneducated prisons in the preparation and filing of legal papers.  The court ruled that this evidence was not relevant because it was not an issue in the case.  As explained in footnote 1, supra, a motion for reconsideration is granted only if the movant can demonstrate: "(1)  an intervening change in controlling law, (2) the availability of new evidence not previously available,  or (3) the need to correct a clear error of law or to prevent manifest injustice."  Reich, 834 F. Supp. at 755.  Again, plaintiff does not argue that new evidence is available or that there is a change in the controlling law.  There is no clear error of law or manifest injustice with respect to this matter.

the prison officials, and the court of appeals reversed, concluding that the prisoner had a liberty interest in remaining free from disciplinary segregation and that a disputed question of fact remained at issue.  Id. at 476.  The focus of the court of appeals' decision was a prison regulation directing the committee to find guilt when a misconduct charge was supported by substantial evidence, reasoning that the committee's duty to find guilt was nondiscretionary.  In examining the circumstances under which a state prison regulation affords inmates a liberty interest protected by the Due Process Clause, the United States Supreme Court reversed.  The Court held that neither the prison regulation at issue in that case, nor the Due Process Clause, afforded the prisoner a protected liberty interest that entitled him to the procedural protection set forth in Wolff v. McDonnell,[7] 418 U.S. 539 (1974).  The Supreme Court recognized that "States may in certain circumstances create liberty interests that are protected by the Due Process Clause," but that these interests were "generally limited to freedom from restraint" like a transfer to a mental hospital and involuntary administration of psychotropic drugs, which "nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, at 484.  The Court concluded that the plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  Id. at 486.

Jacobs also cites Farmer v. Brennan, 511 U.S. 825 (1994), for the proposition that prison officials are prohibited from knowingly placing prisoners under conditions which pose a serious

---

[7]         Under *Wolff,* States may in certain circumstances create liberty interests that are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 472.

to health or safety. In <u>Farmer</u>, the United States Supreme Court considered whether a district court's disposition of a transsexual prisoner's complaint summarily affirmed without briefing by a court of appeals, comported with Eighth Amendment principles. The petitioner in <u>Farmer</u> alleged that prison officials failed to keep him from harm by placing him in the general prison population, where he was beaten and raped by another prisoner. <u>Id.</u> at 830. The Court held that the standard under which a prison official may be held liable for denying humane conditions of confinement is a subjective one, i.e. that liability attaches only when the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847.

Here, plaintiff claims that his due process claim was summarily dismissed and all the evidence introduced which supported it was made obsolete. It is not clear to the court from Jacobs' Motion for a New Trial and his brief in support, when it is that the court allegedly dismissed a due process claim predicated upon his solitary confinement. In reviewing Jacobs' pretrial narrative statements (ECF Nos. 71, 97), the court could not find where Jacobs set forth a due process claim based upon his conditions of solitary confinement. Even if the court overlooked such claim, the decisions relied upon by Jacobs do not support a finding that any court ruling in the instant case, sustaining defendants' objection to the admissibility of proposed evidence concerning the DOC's policy on solitary confinement, would have been relevant to plaintiff's access to courts claims.

Therefore, plaintiff's motion for a new trial based upon alleged error or surprise related to the court's disposition of the relevancy of plaintiff's proposed evidence concerning the alleged DOC's policies is denied. These issues were raised and resolved by the court during the trial, and the court is not inclined to reconsider its rulings under the circumstances. The court is not

aware of any law or argument not already considered.  For the reasons set forth above and on the

record at trial, the court acted within its discretion in precluding the introduction of this evidence.

c.    <u>Fourteenth Amendment Deprivation of Property.</u>

Plaintiff asserts that the court erred by relying upon <u>Hudson v. Palmer</u>, 468 U.S. 517

(1984), for the proposition that plaintiff was required to exhaust post-deprivation remedies

before gaining federal review as the basis for dismissing his § 1983 due process claim predicated

on defendants' alleged destruction of his legal property on September 15 and 16, 2003.  (<u>See</u>

Trial Tr. 3-6, Nov. 4, 2008.)  With respect to this issue, the United States Supreme Court opined;

> [W]e hold that an unauthorized intentional deprivation of property
> by a state employee does not constitute a violation of the
> procedural requirements of the Due Process Clause of the
> Fourteenth Amendment if a meaningful postdeprivation remedy
> for the loss is available. For intentional, as for negligent
> deprivations of property by state employees, the state's action is
> not complete until and unless it provides or refuses to provide a
> suitable postdeprivation remedy.

<u>Hudson</u>, 468 U.S. at 533.

Plaintiff points to <u>Davidson v. O'Lone</u>, 752 F.2d 817 (3d Cir. 1984), among other

decisions, for the proposition that the exhaustion of state remedies for § 1983 actions is not

required.  Plaintiff's reliance upon <u>Davidson</u> is misplaced.  In <u>Davidson</u>, the issue before the

Court of Appeals for the Third Circuit concerned a plaintiff's liberty interest.  Jacobs' attempt to

apply the holding in <u>Davidson</u> to overrule <u>Hudson</u> with respect to a requirement to exhaust

administrative remedies concerning a prisoner's deprivation of property misstates the law.  In

distinguishing the two interests, the court of appeals stated:

> We thus reaffirm that actions may be brought in federal court
> under § 1983 when there has been infringement of a liberty interest
> by intentional conduct, gross negligence or reckless indifference,
> or an established state procedure.  The viability of such § 1983
> actions does not depend on whether or not a postdeprivation

> remedy is available in state court. We do not read anything to the contrary in the holdings in *Parratt* and *Hudson,* which concerned a prisoner's property right. It is untenable that the Court intended in those cases to subject all suits for unconstitutional acts under color of law, including those implicating a liberty or life interest, to a state remedy, if available.

Davidson, 752 F.2d at 828.  (footnote omitted)

In the instant case, plaintiff's claims that his due process rights were trampled on involve property rights – his legal papers – not liberty rights, like those at issue in Davidson.  Plaintiff's assertion that courts have repeatedly declined to require exhaustion of state remedies for § 1983 actions is not true under the circumstances of this case.  Plaintiff relies upon Patsy v. Board of Regents of State of Florida, 457 U.S. 496 (1982), and Steffel v. Thompson, 415 U.S. 452 (1974).  While in Patsy, the United States Supreme Court noted that, as a general rule, exhaustion of state administrative remedies is not a prerequisite to claims premised upon § 1983,  Patsy involved requests for declaratory or injunctive relief or damages arising upon the denial of employment opportunities because of race and sex and predated Hudson.  Patsy, 457 U.S. 500-07.  Patsy does not support plaintiff's position; to the contrary, plaintiff, whose claims involved procedural due process with respect to property interests, cannot recover if there is a meaningful postdeprivation remedy.  Similarly, Steffel does not support plaintiff's position with respect to this issue.  The issue before the United States Supreme Court in Steffel was whether "declaratory relief is precluded when a state prosecution has been threatened, but is not pending . . .."  Steffel, 415 U.S. at 454.  Steffel, like Patsy, predated Hudson and did not involve a suit brought under § 1983 by an adult prisoner with respect to due process violations involving his property interests.  The rationale of Steffel simply is not applicable to this case.  Here, plaintiff had no due process claim because he had meaningful postdeprivation remedies for his property rights.

Since there is no evidence of error or surprise, there is no basis for a new trial. Plaintiff's Fourteenth Amendment due process claims predicated on an alleged governmental deprivation of his property interests were properly dismissed because plaintiff had meaningful postdeprivation remedies which he failed to exhaust. There is no basis for the court to grant a new trial pursuant to Rule 59 or 60 because the court did not abuse its discretion.

**V.**     **Conclusion**

For the reasons given above, plaintiff's motion for costs (ECF No. 219) will be denied without prejudice to allow plaintiff to provide sufficient documentation to support his request. With respect to plaintiff's motion to alter or amend judgment pursuant to Federal Rules of Civil Procedure 52 and 59 (ECF No. 220) and motion for a new trial on issues not presented to the jury (ECF No. 221), for the reasons stated above, the court will deny the motions with prejudice.

**ORDER**

AND NOW 7th day of June 2011, for the reasons set forth in the foregoing memorandum opinion, the motion filed by plaintiff for prejudgment and postjudgment costs (ECF No. 219) is **DENIED without prejudice** and his motions to alter or amend judgment (ECF No. 220) and for a new trial (ECF NO. 221) are **DENIED with prejudice.**

By the Court,
/s/JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc:     Andre Jacobs
        #DQ 5437
        Box A
        Bellefonte, PA  16873

        Shannon Craven @ ca3.uscourts.gov